UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Dustin Bemesderfer,

    Plaintiff,

v.

UNITED PARCEL SERVICE, INC.,

    Defendant.

Case No.

**JURY TRIAL DEMANDED**

## COMPLAINT

**COMES NOW,** Dustin Bemesderfer by and through the undersigned counsel, files his Complaint against Defendant, United Parcel Service, Inc. ("UPS") for violations of Title I of the Americans with Disabilities Act, 42 U.S.C. 12101 *et. seq.* and the Florida Civil Rights Act, Fla. Stat. § 760.01, *et seq.*, as follows:

### JURISDICTION AND VENUE

1. This suit is brought and jurisdiction lies pursuant to Title I of Americans with Disabilities Act, 42 U.S.C. §12117, *et seq.*, ("ADA"), and supplemental claims jurisdiction for claims under the Florida Civil Rights Act ("FCRA"), Fla. Stat. §760.11. *et seq*.

2. UPS does business in Florida, and a substantial portion of the events or omissions giving rise to Mr. Bemesderfer's claims occurred in Longwood, Seminole County, Florida, such that venue is proper within the United States District Court for

the Middle District of Florida, Orlando Division, pursuant to 28 U.S.C. §§ 1391 (b)(1)-(b)(2).

## PARTIES

### MR. BEMESDERFER

3. Dustin Bemesderfer ("Mr. Bemesderfer") is a deaf individual, over the age of eighteen (18), and otherwise *sui juris* in all respects.

4. Mr. Bemesderfer uses written English and American Sign Language ("ASL") to understand communication. Mr. Bemesderfer expresses communication through written communication, using his voice, and signing in ASL.

5. At all times material, Mr. Bemesderfer was and is deaf and is an "individual with a disability" because he is substantially limited in the major life activity of hearing. 42 U.S.C. § 12102; Fla. Stat. § 760.01, *et seq.* , Mr. Bemesderfer is a "qualified individual with a disability" as defined in the ADA, because he has a card issued by the United States Department of Transportation to drive commercial motor vehicles. 42 U.S.C. §12111(8) and the Fla. Stat § 760.01, *et seq*.

### DEFENDANT

6. Defendant, UPS is one of the nation's largest package distributors with approximately 500,000 employees worldwide and with more than 10,000 locations. UPS is an "employer" within the meaning of the ADA, 42 U.S.C. §12111(5)(A) and Fla. Stat. § 760.02.

7. UPS is a For Profit Corporation doing business in Florida, and employs

Mr. Bemesderfer at their Longwood, Florida, Customer Center, 1050 Bennett Drive, Longwood, Florida.

## MR. BEMESDERFER'S COMPLIANCE WITH ADMINISTRATIVE PRE-REQUISITES

8. Mr. Bemesderfer has timely complied with all conditions precedent to jurisdiction under the ADA 42 U.S.C. §12117 and the FCRA, Fla. Stat. § 760.11.

9. Mr. Bemesderfer's Notice of Right to Sue was issued by the U.S. Equal Employment Opportunity Commission ("EEOC") on November 9, 2021 and was received by Mr. Bemesderfer on or about November 10, 2021.

## STATEMENT OF FACTS

10. Mr. Bemesderfer is married with a newborn child. He has resided in Florida all of his life.

11. Mr. Bemesderfer is deaf. He uses hearing aids and relies on written communication at UPS. He also uses American Sign Language to communicate.

12. Mr. Bemesderfer began his employment at UPS on August 26, 2017 as a part-time package handler.

13. Hoping to earn more money and obtain advancement, on or about July 2019, Mr. Bemesderfer bid for two open delivery driver positions at UPS including the "Cover Driver" and the "22.3 Package Car Driver" positions.

14. In August 2019, UPS offered for Mr. Bemesderfer to begin the driver promotion process.

15. In August 2019, UPS told Mr. Bemesderfer to go to a UPS-approved

medical examiner to get a physical to obtain the United States Department of Transportation ("DOT") card. He passed all of the requirements except for the hearing evaluation.

16. In August 2019, UPS did not promote Mr. Bemesderfer to any driver position solely because he did not pass the hearing evaluation to obtain the DOT card.

17. The DOT regulations prohibit an individual who does not pass the hearing requirements listed in the regulations from operating a commercial motor vehicle in interstate commerce unless that individual receives an exemption provided by the DOT. 49 C.F.R. § 391.41(b).

18. Since 2013, the DOT has granted an exemption of the hearing requirements listed in the regulations for individuals who demonstrate their ability to operate a commercial motor vehicle.

19. Therefore, in August 2019, Mr. Bemesderfer applied to the DOT for the Federal Motor Carrier Safety Administration ("FMCSA") hearing exemption.

20. To determine if an applicant is eligible, the FMCSA evaluates the applicant's driving record, the type of vehicle he/she would be driving, including gross vehicle weight rating, and requests public comment on whether the FMCSA should grant the exemption to the individual.

21. The DOT ensures that the hearing exemption maintains a level of safety equivalent to, or greater than, the level achieved without the exemption in order to

meet the qualifications for an exemption.

22. The DOT carefully evaluates the application for an exemption and, as required by 49 U.S.C. 31315(b), prepares a Federal Register notice requesting public comment on the application for the exemption.

23. The DOT establishes the physical qualifications for individuals to drive commercial motor vehicles.

24. UPS does not establish the physical qualifications for individuals to drive commercial motor vehicles.

25. UPS cannot establish physical qualifications different from the DOT for individuals to drive commercial motor vehicles, as the DOT has sole authority to do so.

26. Upon information and belief, UPS did not respond to the DOT's request for public comment on Mr. Bemesderfer's application for a waiver.

27. On or about May 15, 2020, the DOT determined Mr. Bemesderfer could maintain a level of safety equivalent to, or greater than, the level achieved without the exemption and granted Mr. Bemesderfer his FMCSA hearing exemption and his DOT card.

28. With a DOT card, Mr. Bemesderfer is qualified to drive commercial motor vehicles over 10,001 pounds.

29. In June 2020, Mr. Bemesderfer bid again for a delivery driver position including one part-time position and two fulltime positions.

30. Mr. Bemesderfer successfully passed Defendant's road test which "qualified" him for the next step in obtaining a driver position.

31. On June 11, 2020, Mr. Bemesderfer gave a copy of his DOT card to UPS's human resources department. The HR representative said she needed to "verify" the validity of the hearing exemption before Mr. Bemesderfer could take the driver orientation course.

32. On June 18, 2020, Mr. Bemesderfer sent a text message to UPS's HR representative for an update on the "verification" of his hearing exemption. UPS did not respond to his inquiry.

33. On July 7, 2020, Mr. Bemesderfer sent another text message to UPS's HR representative for an update on the "verification" of his hearing exemption. UPS did not respond to his inquiry.

34. On July 9, 2020, Mr. Bemesderfer went into UPS's HR office and asked the representative for an update on her "verification" of his hearing exemption. The HR representative told Mr. Bemesderfer that "UPS does not accept the FMCSA hearing exemption."

35. Shortly thereafter, on July 9, 2020, UPS sent Mr. Bemesderfer a text message stating, "Unfortunately, UPS does not participate in the FMCSA program.", and that "[he] would still need to pass the standard hearing test without exemption to be eligible to drive."

36. UPS does not have the option to not participate in the DOT hearing exemption program.

6

37. UPS is required to comply with all DOT regulations, including the FMCSA hearing exemption program.

38. UPS must accept Mr. Bemesderfer's FMCSA hearing exemption and DOT card permitting him to drive commercial motor vehicles.

39. UPS discriminated against Mr. Bemesderfer with malice and reckless disregard for his rights when it refused to accept his DOT card.

40. UPS further discriminated against Mr. Bemesderfer with malice and reckless disregard for his rights by denying him the opportunity to take the driver orientation training and by denying him the opportunity to engage in the 30-day probationary period for management to evaluate his driving.

41. On July 11, 2020, Mr. Bemesderfer filed a grievance with his union, Teamsters Local 385 for discriminating against him based on his disability and in violation of the union's Collective Bargaining Agreement ("CBA") with Defendant.

42. In November 2020, Mr. Bemesderfer exhausted the grievance procedure process required by the CBA.

43. Teamsters and UPS reached a deadlock and UPS would still not permit Mr. Bemesderfer to advance to a driver position even though he possessed a DOT card permitting him to drive commercial motor vehicles.

44. On or around December 4, 2020, Mr. Bemesderfer filed a charge of discrimination with the City of Orlando, Office of Human Relations. The charge was forwarded and filed at the EEOC on December 15, 2020. The EEOC investigators contacted UPS and conducted an investigation with UPS management.

On or around Fall 2021, Mr. Bemesderfer's immediate supervisor began treating Mr. Bemesderfer more harshly, assigning him less favorable duties, placing him in dangerous situations, and retaliating against him with malice and reckless disregard for his rights solely because he asked for an accommodation, filed an EEOC charge, and submitted a union grievance based on disability discrimination. After filing a grievance for the retaliation, a union representative interceded on approximately January 17, 2022 and UPS stopped the retaliatory acts.

45. From August 2019 to date, Mr. Bemesderfer continues to bid for driver positions at all times UPS posted open driver positions.

46. UPS continues to deny Mr. Bemesderfer an opportunity to advance to the driver position, a difference in part-time versus full-time compensation, a pay differential of over ten dollars per hour, and an additional opportunity for significant weekly overtime compensation.

47. UPS intentionally violated the rights of Mr. Bemesderfer, who is entitled to protection under the anti-discrimination statutes and he has suffered emotional and pecuniary loss as a result.

48. UPS acted with malice and reckless disregard to Mr. Bemesderfer's statutory protected rights, and he is entitled to punitive damages from UPS.

## CLAIM I

## VIOLATION OF TITLE I OF THE ADA

49. Mr. Bemesderfer repeats and re-alleges allegations ¶¶ 1-49 in support of his claims.

50. UPS is an employer as defined under the ADA. 42 U.S.C. §§ 12111, 12112.

51. At all times material, Mr. Bemesderfer is an individual with a disability because he is deaf and substantially limited in the major life activity of hearing.

52. Mr. Bemesderfer is a qualified individual with a disability as defined in 42 U.S.C. § 12111. He is qualified to drive a commercial motor vehicle because he has a DOT card. Since at least May 2020, Defendant has engaged in unlawful employment practices against Mr. Bemesderfer in violation of Title I of the ADA by refusing to promote him to a driver position based on his disability. 42 U.S.C. § 12112(a).

53. Since at least May 2020, Defendant has engaged in unlawful employment practices against Mr. Bemesderfer in violation of Title I of the ADA by refusing to accommodate his hearing loss by accepting his DOT card. 42 U.S.C. § 12112(a).

54. Since at least May 2020, Defendant has engaged in unlawful employment practices against Mr. Bemesderfer by utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability; or that perpetuate the discrimination of others. 42 U.S.C. § 12112(b)(3).

55. Since at least May 2020, Defendant has engaged in unlawful employment practices against Mr. Bemesderfer by treating him differently and disparately compared to non-disabled people or non-deaf people in violation of Title I of the ADA. 42 U.S.C. § 12112(b)(4).The employment practices contained in

Claim I resulted in loss of income and adverse employment actions and other economic harms against Mr. Bemesderfer.

56. The unlawful employment practices contained in Claim I caused significant emotional and mental anguish, pain and suffering, stress, humiliation, and frustration to Mr. Bemesderfer.

57. As a direct and proximate result of Defendant's continuous discrimination on the basis of disability, Mr. Bemesderfer suffered pecuniary damages, actual damages, mental anguish, emotional distress, loss of enjoyment of life, and other non-pecuniary losses, and punitive damages should be awarded against UPS.

58. The unlawful practices contained in Claim I were done by UPS with malice or with reckless disregard to Mr. Bemesderfer's federally protected rights, and he is entitled to punitive damages from UPS.

## CLAIM II

## ADA RETALIATION

59. Mr. Bemesderfer repeats and re-alleges allegations ¶¶ 1-59 in support of his claims.

60. UPS is an employer as defined under the ADA. 42 U.S.C. §§ 12111, 12112.

61. Mr. Bemesderfer is an individual with a disability as defined in 42 U.S.C. § 12111, in that he is deaf and substantially limited in the major life activity of hearing.

62. Mr. Bemesderfer is a qualified individual with a disability as defined in 42 U.S.C. § 12111. He is qualified to drive commercial motor vehicles because he has a DOT card.

63. At all times material, Mr. Bemesderfer is an individual with a disability.

64. Since at least May 2020 to January 2022, Defendant engaged in unlawful retaliation against Mr. Bemesderfer because he engaged in the protected activity of requesting an accommodation, filing a union grievance and a charge at the EEOC for disability discrimination.

65. Defendant's retaliation against Mr. Bemesderfer violated Title I of the Americans with Disabilities Act. 42 U.S.C. § 12203.

66. The unlawful employment practices contained in Claim II caused significant emotional and mental anguish, pain and suffering, stress, humiliation, and frustration to the Mr. Bemesderfer.

67. As a direct and proximate result of Defendant's continuous discrimination on the basis of disability, Mr. Bemesderfer suffered pecuniary damages, actual damages, mental anguish, emotional distress, loss of enjoyment of life, and other non-pecuniary losses.

68. The unlawful employment practices contained in Claim II were done by UPS with malice and with reckless disregard to the federally protected rights of Mr. Bemesderfer, and he is entitled to punitive damages from UPS.

## CLAIM III

**FAILURE TO PROMOTE IN VIOLATION OF FCRA**

69. Mr. Bemesderfer realleges the allegations in ¶¶ 1-69 of this Complaint.

70. Defendant is an employer and a covered entity under the FCRA subject to its provisions. Fla. Stat. § 760.02, *et seq.*

71. Mr. Bemesderfer is an employee under the FCRA. Fla. Stat. § 760.01, *et seq.*

72. Mr. Bemesderfer is a qualified individual with a disability[1] as defined in the FCRA in that he is deaf and is qualified to drive commercial motor vehicles because he has a DOT card. Fla. Stat. § 760.01, *et seq.*

73. At all times material, Mr. Bemesderfer was and is disabled as defined by Florida state law. Mr. Bemesderfer is deaf, UPS had a record of his handicap, and the UPS regarded Mr. Bemesderfer as being disabled. Fla. Stat. § 760.01, *et seq.*

74. Mr. Bemesderfer could perform the essential functions of his position without reasonable accommodations, or with reasonable accommodations including, but not limited to, the continued use of written or text communication, and sign language interpreters, and UPS accepting his DOT card. Fla. Stat. § 760.01, *et seq.*

75. Since at least May 2020, Defendant has engaged in unlawful employment practices against Mr. Bemesderfer by denying him the promotion to a driver position in violation of the FCRA. Fla. Stat. § 760.01, *et seq.*

76. Mr. Bemesderfer is protected against discrimination under the FCRA.

---

[1] Fla. Stat. § 760.01, *et seq.* uses an archaic term "handicap" to refer to "disability."

Fla. Stat. § 760.01, *et seq*.

77. Mr. Bemesderfer has been damaged as a direct and proximate result of Defendant's illegal employment practices, including suffering economic damages, compensatory damages, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of dignity, and other non-pecuniary losses and tangible injuries. Fla. Stat. § 760.01, *et seq*.

78. The unlawful practices contained in Claim III were done by UPS with malice or with reckless disregard to Mr. Bemesderfer's statutorily protected rights, and he is entitled to punitive damages from UPS under the FCRA. Fla. Stat. § 760.11 (5).

## CLAIM IV

## RETALIATION IN VIOLATION OF THE FCRA

79. Mr. Bemesderfer repeats and re-alleges allegations ¶¶ 1-79 in support of his claims.

80. UPS is an employer as defined under the FCRA. Fla. Stat. § 760.02, *et seq*.

81. Mr. Bemesderfer is an individual with a disability[2] as defined in the FCRA. Fla. Stat. § 760.01, *et seq*.

82. Mr. Bemesderfer is a qualified individual with a disability as defined in the FCRA because DOT has issued him a card to drive commercial motor vehicles. Fla. Stat. § 760.01, *et seq*.

---

[2] See footnote 1.

83. Since at least May 2020 to January 2022, Defendant engaged in unlawful retaliation against Mr. Bemesderfer because he engaged in the protected activity of requesting an accommodation, filing a union grievance, and a charge at the EEOC for disability discrimination.

84. Defendant's retaliation against Mr. Bemesderfer violates the FCRA. Fla. Stat. § 760.10(7).

85. The unlawful employment practices contained in Claim IV caused significant emotional and mental anguish, pain and suffering, stress, humiliation, and frustration to Mr. Bemesderfer.

86. As a direct and proximate result of Defendant's continuous retaliation and discrimination on the basis of "handicap", Mr. Bemesderfer suffered pecuniary damages, actual damages, mental anguish, emotional distress, loss of enjoyment of life, and other non-pecuniary losses. Fla. Stat. § 760.01, *et seq*.

87. The unlawful employment practices contained in Claim IV were done by UPS with malice or with reckless disregard to Mr. Bemesderfer's protected rights, and he is entitled to punitive damages from UPS. Fla. Stat. § 760.11 (5).

## RELIEF REQUESTED

**WHEREFORE**, Mr. Bemesderfer requests the following relief:

A. The Court assume Jurisdiction;

B. Find and hold Mr. Bemesderfer has suffered from Defendant's acts of discrimination, on the basis of disability, in violation of the Americans with Disabilities Act and the Florida Civil Rights Act;

C. Find and hold Mr. Bemesderfer has suffered from Defendant's acts of retaliation in violation of the Americans with Disabilities Act and the Florida Civil Rights Act;

D. Order Defendant to immediately place Mr. Bemesderfer in a fulltime delivery driver position;

E. Order that Mr. Bemesderfer be awarded the back pay that he would have earned, inclusive of all forms of compensation and lost benefits, with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices;

F. Order that Mr. Bemesderfer be awarded front pay;

G. Award Mr. Bemesderfer compensatory damages in an amount to be determined at trial:

H. Order Defendant to make Mr. Bemesderfer whole by providing compensation for past and future non-pecuniary losses resulting from Defendant's unlawful employment practices, including emotional and mental anguish, pain and suffering, stress, humiliation and frustration inconvenience, loss of enjoyment of life, loss of dignity, and any other non-pecuniary losses or intangible injuries allowable by law or equity; in amounts to be determined at trial;

I. Order Defendant to pay Mr. Bemesderfer punitive damages for the

        malicious and/or reckless conduct described above, in amounts to be determined at trial;

J.     Award reasonable attorneys' fees and expenses, including expert witness fees as allowed by law, all recoverable statutory costs, and all litigation expenses not otherwise expressly allowed by statute; and

K.     Grant such other legal and/or equitable relief as the Court may deem just under the circumstances.

## **JURY DEMAND**

Mr. Bemesderfer demands trial by jury on all issues which can be heard by a jury.

Respectfully submitted this 7th day of February, 2022.

**MORGAN AND MORGAN**

/s/ *Sharon Caserta*
Sharon Caserta, Esq.
Florida Bar No.: 0023117
Morgan & Morgan
Deaf/Disability Rights
76 South Laura Street, Suite 1100
Jacksonville, FL 32202
(904) 361-0078 (Voice)
(904) 245-1121 Videophone
(904) 361-4305 (Facsimile)
scaserta@forthepeople.com

**GILBERT LAW PLLC**

Heather Gilbert, Esq.
Minnesota Bar No. 0392838
Gilbert Law PLLC
4856 Banning Avenue

16

St. Paul, Minnesota 555110
(651) 340-9642 (Voice)
(651) 964-2024 (Videophone)
(651) 344-0835 (Facsimile)
*heather@gilbertlawpllc.com*
*Pro hac vice request forthcoming*

**NATIONAL ASSOCIATION OF THE DEAF**

Marc Charmatz, Esq.
Maryland Bar No. 09358
Marc.charmatz@nad.org
Howard Rosenblum, Esq.
Illinois Bar No. 6209888
howard.rosenblum@nad.org
National Association of the Deaf
8630 Fenton Street, Suite 820
Silver Spring, MD 20910
(301) 328-1443 (Videophone)
(301) 587-1791 (Facsimile)
*Pro hac vice request forthcoming*

*Counsel for Plaintiff Bemesderfer*