# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**DUSTIN BEMESDERFER,**

      **Plaintiff,**

v.                                                             **Case No: 6:22-cv-270-PGB-EJK**

**UNITED PARCEL SERVICE, INC.,**

      **Defendant.**

_____/

## ORDER

This cause is before the Court on Plaintiff Bemesderfer's Motion to Exclude Defendant's Expert, Dr. Brian Fligor. (Doc. 108 (the "**Motion**")). Defendant UPS submitted a Response in Opposition. (Doc. 119). Upon due consideration, the Motion is granted.

**I.  BACKGROUND**

The Plaintiff is employed by the Defendant as a package handler and is hearing-impaired. (Doc. 12). To secure a position as a delivery driver, the Plaintiff applied for and was granted a hearing exemption by the Federal Motor Carrier Safety Administration ("**FMCSA**"). (*Id.* ¶¶ 18–22, 25). The issuance of a Department of Transportation ("**DOT**") card, which includes a hearing exemption, is necessary for the Plaintiff to operate a commercial motor vehicle ("**CMV**")

weighing between 10,001 and 26,000 pounds.[1] (*Id.* ¶ 40). The Plaintiff presented the DOT card to Defendant's human resources department and was ultimately informed that UPS does not participate in the FMCSA hearing exemption program. (*Id.* ¶ 45). The Plaintiff asserts Defendant UPS is discriminating against him in violation of the Americans with Disabilities Act ("**ADA**") and the Florida Civil Rights Act ("**FCRA**"). (*Id.* ¶¶ 66–120). He also brings claims for retaliation. (*Id.*).

Defendant UPS asserts 28 defenses, some of which are denials and not defenses, but a few are worth noting:

> 5. Plaintiff is not a qualified disabled employee who can perform the essential functions of his job with or without a reasonable accommodation, including, *inter alia*, because he cannot meet the requirements of the FMCSA regulations, which is an essential function and/or qualification standard, test, or selection criteria that is job-related and consistent with business necessity.
>
> 9. Plaintiff's alleged disability posed a direct threat to the safety of Plaintiff and others that could not be eliminated by reasonable accommodation.

(Doc. 32).

The Court issued a Case Management and Scheduling Order ("**CMSO**") on June 9, 2022, and set the deadline for disclosure of expert reports as March 1, 2023

---

[1] The FMCSA processes request for an exemption from the hearing standard for issuance of a commercial motor vehicle license under 49 C.F.R. § 391.41(b)(11). Section 391.11 provides the rules "establish minimum qualifications for persons who drive commercial motor vehicles." "In order to grant an exemption, the Agency must ensure that each exemption would maintain a level of safety equivalent to, or greater than, the level achieved without the exemption." *See* FMCSA, *Hearing Exemption Application*, https://www.fmcsa.dot.gov/regulations/medical/hearing-exemption-application (last updated Jan. 21, 2015). Under Section 391.41(a)(1)(i) and (ii), an individual possessing a medical examiner's certificate by virtue of having received a medical variance from FMCSA (i.e. an exemption) is qualified to operate a CMV in the United States.

for the Plaintiff and April 3, 2023 for the Defendant. (Doc. 34). The Court amended the CMSO on May 2, 2023, extending the deadline for expert reports through May 31, 2023. (Doc. 94). And the Court extended the deadline for expert reports once more, setting June 21, 2023 as the deadline for all expert reports. (Doc. 99). The deadline for filing dispositive and *Daubert* motions remained July 21, 2023. (Doc. 94). The Plaintiff filed the Motion to Exclude Dr. Fligor on June 30, 2023—9 days after the deadline for disclosure of expert reports. (Doc. 108). Discovery closed on June 21, 2023, but the Court extended the time to complete discovery limited to a Rule 30(b)(6) deposition and submission of summary judgment, with the former required by July 31, 2023 and the latter no later than August 4, 2023. (Docs. 110, 114).[2] No other modifications to the CMSO were authorized.

## II. LEGAL STANDARDS

Federal Rule of Evidence 702 permits "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to testify in the form of an opinion. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court explained that Rule 702 imposes an obligation on a trial court to act as gatekeeper, to ensure that all scientific testimony or evidence admitted is not only relevant, but reliable. Although the expert testimony at issue in *Daubert* was scientific, the Supreme Court held in *Kumho Tire Co., Ltd. v.*

---

[2] The parties conducted depositions of four (4) expert witnesses after the close of discovery without leave of Court. (*See* Doc. 117, p. 2). The parties are reminded that a Case Management and Scheduling Order is just that—an Order. It is not a suggestion which the parties are free to disregard.

3

*Carmichael*, 526 U.S. 137, 141, 147–48 (1999), that the *Daubert* analysis and a trial judge's role as gatekeeper apply "not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'otherwise specialized' knowledge." District courts are charged with this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury" under the mantle of reliability that accompanies "expert testimony." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). Thus, the party offering an expert opinion has the burden of establishing three criteria: qualification, reliability, and helpfulness. *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1238 (11th Cir. 2005).

First, the witness must be "qualified to testify competently regarding the matters he intends to address." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). An expert's qualifications may be evidenced by education, training, work experience, publication in the pertinent field, and membership in professional societies. *See Am. Tech. Res. v. United States*, 893 F.2d 651, 656 (3d Cir. 1990).

Second, the expert witness must employ "sufficiently reliable" scientific methods or principles to form his opinions. *Rink*, 400 F.3d at 1291. However, a witness may also rely solely on experience if the witness explains "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Augustin*, 661 F.3d 1105, 1125 (11th Cir. 2011); FED. R. EVID. 702 advisory

4

committee notes to 2000 amendments. The district court's "gatekeeping function requires more than simply taking the expert's word for it." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (internal quotations omitted).

Third, the expert's testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. Expert testimony provides assistance where it concerns matters beyond the ken of the average juror and will allow the jury to understand the evidence or to resolve a factual dispute. *See Kumho Tire*, 526 U.S. at 148–49. Conversely, there will be no need for an expert's opinion where the jury can decide a disputed issue through the application of common sense or simple logic in light of the evidence and testimony presented at trial. *See Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001). Further, like all evidence and testimony, an expert's opinion must be relevant to an issue in the case and must hold probative value that outweighs the concerns listed in Federal Rule of Evidence 403. *Daubert*, 509 U.S. at 591.

## III.   DISCUSSION

### A.   Dr. Fligor's Initial, Rebuttal, and Supplemental Reports

Federal Rule of Civil Procedure 26(a)(2) mandates the disclosure of the identity of any witness a party may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705. This disclosure "must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case." FED. R. CIV. P. 26(a)(2)(B). The requirement to furnish an expert report is not a trifling one. The

5

Rule requires the expert's report to contain "a *complete* statement of all opinions the witness will express and the basis and reasons for them," the facts or data considered by the expert, exhibits used to summarize or support the opinions, the expert's qualifications, a list of prior trial and deposition testimony, and the expert's compensation. *Id.* (emphasis added). Rule 26 does not operate in a vacuum, and the Court's CMSO establishes deadlines to be adhered to by the parties.

Rule 26(e) provides a very narrow exception to the deadline established in the CMSO. Pursuant to that rule, a party must *supplement or correct*—not replace or recreate—its expert disclosure "if the party learns that in some material respect the disclosure or response is incomplete or incorrect." *See* FED. R. CIV. P. 26(e). The unambiguous language of Rule 26(e) informs a party to supplement or correct its prior disclosure to avoid misleading the opposing party and is required only where the corrective information has not otherwise been made known to the other parties. *Id.* Rule 26(e) does not invite a second bite at the apple.

Here the Defendant inexplicably tendered an expert report by Dr. Brian Fligor that was prepared for a different case. (Doc. 108-1). Dr. Fligor was retained in *Murphy v. UPS* (Case No. 19-CV-1728-PP (E.D. Wis. 2019)) and prepared a report dated June 27, 2022, almost exactly one year before the deadline imposed in this case for expert reports. (*Id.*). Dr. Fligor's rebuttal report, also prepared for the *Murphy* case, critiques opinions offered by experts disclosed by the plaintiff in that case. (Doc. 108-2). In the instant case, the Defendant tendered what it

6

characterizes as the "supplemental" report of Brian Fligor. (Doc. 119-4). This new report is undated, but defense counsel represents it was tendered to the Plaintiff on July 12, 2023, after the deadline for expert disclosures. (Doc. 119, p. 6). Two days later, without leave of this Court and after the deadline for the completion of discovery, Dr. Fligor was deposed. (Doc. 119-5).

Dr. Fligor's report is not a supplemental report as Rule 26(e) intends that rule to be understood. As discussed above, Rule 26(e) is designed to prevent prejudice to opposing counsel when the proponent of an expert's report discovers an error or omission in a timely filed expert report. The Defendant disregards the limiting language of Rule 26(e)[3] and argues the submission of an untimely expert report "that address[es] Bemesderfer's specific circumstances" is enough to defeat the *Daubert* challenge. (Doc. 119, p. 6). This is incorrect because, as already discussed, Rule 26(e) applies only to cure an error or omission and not as a vehicle to circumvent the deadline established in the CMSO.

The Defendant next argues that the Plaintiff is not prejudiced by the untimely disclosure of Dr. Fligor's new opinions, because the new report was produced two days before Dr. Fligor's deposition. (Doc. 119, p. 7). This argument does not hold up to scrutiny. The Court's CMSO designates disclosure deadlines to ensure the parties are not prejudiced. Springing new opinions on opposing counsel

---

[3] The Defendant submits that "supplemental reports are considered timely up until thirty days prior to trial unless the court orders otherwise." (Doc. 119, p. 7). This proposition is technically accurate, but application of Rule 26(e) is only proper under the circumstances identified in this Order.

7

on the eve of deposition is precisely the type of prejudice the CMSO is designed to eliminate. The Defendant also contends the supplemental report "address[es] Bemesderfer's specific circumstances" while also arguing that Dr. Fligor's new report offers no new theories or modifications to the methodology offered in the *Murphy* expert report.[4] (*Id.* at p. 8). If it is true that the supplemental report does not correct errors or remedy omissions from the initial report, the predicate for application of Rule 26(e) is missing. Finally, doubling down on the misapplication of Rule 26(e), the Defendant claims, "[t]o the extent Fligor was required to contemplate Bemesderfer's individualized circumstances, Fligor's supplemental report and deposition moot Bemesderfer's motion." (*Id.*).

The Court rejects the notion that a party may disregard the CMSO and offer a new report tailored to the Plaintiff on the eve of deposition and thereby erase prejudice.[5] To allow otherwise turns the CMSO into a mere piece of paper and

---

[4] While the Defendant proffers that the "supplemental" report "does not present any new theories or change Dr. Fligor's underlying methodology, [and] so no harm or prejudice has been imposed upon [Plaintiff]," counsel does not compare the "supplemental" report with Dr. Fligor's original and rebuttal reports. Similarly, Defendant claims Plaintiff's counsel "was able to question Dr. Fligor amply regarding his supplemental report," (Doc. 119, p. 7), but the defense does not demonstrate support for this proposition with record citation. True, counsel attached the "supplemental" report and Dr. Fligor's deposition to his response, but it is not the Court's duty to scour these documents to find support for the Defendant's position.

[5] Nor is the Court persuaded by Defendant's argument that the trial date negates prejudice to the Plaintiff. (*Id.* at p. 7). The gist of Defendant's argument is that the CMSO can be ignored provided there is adequate time for the aggrieved party to play catch-up. In every case there is a span of several months from dispositive and *Daubert* motions and trial. This period is designed to allow the Court adequate time to resolve these motions prior to trial, due to the hundreds of cases before the Court. If a party disregards the deadline for expert disclosures and offers new opinions, the opposing party must be permitted leave to file a new *Daubert* challenge, thus inviting a new response, and thereby infringing upon the Court's preparation. This is why Rule 26(e) is limited to correcting mistakes and not offering untimely expert opinions.

allows the narrow exception provided for in Rule 26(e) to consume the rule on expert disclosures. *See Gales v. Wal-Mart Stores East, L.P.*, No. 6:19-cv-1152-PGB-LRH, 2021 WL 2823269 (M.D. Fla. Apr. 12, 2021) (holding good cause standard precludes modification of a CMSO unless the schedule cannot be met despite the party's diligence). The district court retains discretion in enforcing its pre-trial scheduling order. *Kendall v. Thaxton Rd. LLC*, 443 F. App'x 338, 392 (11th Cir. 2011) (citing *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417 (11th Cir. 1998)). Accordingly, Dr. Fligor's "supplemental report" is untimely and will not be considered by the jury or by this Court.

### B.     The *Daubert* Challenge

#### 1.     Methodology

An expert witness must employ sufficiently reliable scientific methods or principles to form his opinions. *Rink*, 400 F.3d at 1291. The reliability of an expert's methodology can be evaluated by considering a wide range of factors, including: (1) whether the expert bases his or her opinion on sufficient facts or data; (2) whether the expert unjustifiably extrapolates his or her research to reach an unfounded conclusion; (3) whether the expert considers or accounts for contradictory studies or data; (4) the extent to which the methods used rely on the expert's subjective interpretations; and (5) whether the expert is being as careful as an expert in the same field would be in conducting professional work outside the context of paid litigation. *See Daubert*, 509 U.S. at 593–94; FED. R. EVID. 702 advisory committee notes to 2000 amendments.

The Plaintiff submits that Dr. Fligor's opinions are not founded on sufficient facts or data. (Doc. 108, p. 3). For example, Dr. Fligor fails to make any reference to the Plaintiff in his reports, because they were prepared for a different case. (*Id.*). And Dr. Fligor has not read the Plaintiff's deposition, or any other discovery produced in this case. (*Id.*). The Plaintiff also observes that while Dr. Fligor is an audiologist, "he has not reviewed Plaintiff Bemesderfer's audiogram which was produced in discovery in March 2023." (*Id.*). Plaintiff submits Dr. Fligor's rebuttal report suffers from the same deficiencies. (*Id.* at p. 4). Thus, while Dr. Fligor may be a qualified audiologist, his report reveals his lack of experience and knowledge regarding the specific issues in this case. (*Id.* at p. 7). This point is underscored by Plaintiff's citation to the report prepared in the *Murphy* case where Dr. Fligor opines that Murphy's inability to speak and understand language creates a safety risk in the event of an emergency. (*Id.* at p. 8 (citing Doc. 108-2, p. 4)). Whereas, Plaintiff Bemesderfer uses written English, American Sign Language and spoken words to communicate. (*Id.* at p. 9).

The Plaintiff also avers that Dr. Fligor's methodology is lacking, because UPS has at least five deaf employees who drive package cars and who hold the FMCSA hearing exemption. (*Id.* at p. 11). As such, UPS participates in the FMCSA hearing exemption program. (*Id.*). Moreover, UPS admits that these deaf drivers are safe drivers, they have passed on-the-road-training, and they do not pose a direct threat to UPS employees or the public. (*Id.* at p. 12) (citation to deposition transcripts and exhibits omitted). In fact, UPS has conducted training for deaf drivers including

10

the use of hand signals to identify hazards on the road. (*Id.* at p. 13) (record citation omitted). The Plaintiff submits that UPS admits they never allowed the Plaintiff to take the driver training program to determine if he was a direct threat to the safety of UPS employees or the public. (*Id.* at p. 14). Dr. Fligor fails to account for this data in reaching the blanket opinion that UPS acted reasonably in ignoring the hearing exemption, rendering his methodology deficient.

The Defendant concedes that "UPS has never described Fligor as a subject-matter expert on [Plaintiff] Bemesderfer individually or the element of Bemesderfer's individualized claims." (Doc. 119, p. 2). Rather, Dr. Fligor is offered to opine "as to the business necessity behind UPS's October 2019 policy, which is at the heart of some of UPS's defenses to Bemesderfer's disability discrimination claims," including "the direct threat" defense. (*Id.* at pp. 5–6). Conspicuously missing from the Defendant's response is any discussion of how Dr. Fligor can offer opinions on the business necessity defense without commenting on the Plaintiff's specific limitations. Similarly, the direct threat defense requires the employer to prove the Plaintiff is a significant risk to the health or safety of others that cannot be eliminated by a reasonable accommodation. Dr. Fligor's failure to consider the Plaintiff's specific circumstances renders his methodology fatally flawed. *Augustin*, 661 F.3d at 1125 (the expert must relate his experience to the conclusion reached, explain why the experience is a sufficient basis, and how the experience is reliably applied to the facts).

## 2. *Helpfulness*

The issue of helpfulness is intwined with the sufficiency of Dr. Fligor's methodology. Dr. Fligor describes his report as separated into four parts:

> First, I describe how sound and hearing occur. Second, I describe the principles of assessing functional hearing abilities necessary for the safe performance of hearing-critical job tasks. Third, I consider the appropriateness of using functional hearing assessment for commercial vehicle operators (CVOs) in light of their hearing-critical job tasks. Fourth, I discuss UPS's decision to adhere to extant federal hearing standard for CVOs of DOT–regulated commercial motor vehicles in light of the Federal Motor Carrier Safety Administration's (FMCSA) hearing waiver program.

(Doc. 108-1, ¶ 6).

The Defendant extrapolates on Dr. Fligor's bullet-point summary, noting that he will offer opinions regarding the substantial evidence of a link between hearing ability and the safe operation of a commercial motor vehicle. (Doc. 119, p. 3). That said, Dr. Fligor fails to aptly explain how this opinion applies to the Plaintiff. Since Dr. Fligor's report does not mention the Plaintiff, it is clear that he never used his skill as an audiologist to test the Plaintiff's hearing. Accordingly, Dr. Fligor failed to determine whether the Plaintiff's hearing deficiency leads him to be more likely to be involved in an accident. Nor does Dr. Fligor offer an opinion on whether the Plaintiff's specific disability places him within the category of hearing-impaired drivers who are up to 3.1 times more likely to be involved in an accident or some other ratio. And, finally, Dr. Fligor fails to discuss how the hearing exemption issued in this case has an impact on the Plaintiff's ability to

12

safely operate a commercial motor vehicle, opting for the unsupported generalization that no hearing-impaired person can safely operate a CMV.

While there may be a cohort of hearing-impaired drivers whose disability dictated a demonstrably greater risk of being involved in a collision, Dr. Fligor does not articulate a reliable methodology from which a jury will know to include or exclude the Plaintiff from that cohort. Accordingly, Dr. Fligor's general opinion that a hearing-impaired driver may present a heightened risk of causing or failing to avoid an accident fails for two reasons. First, it is commonsense that it is helpful to have unimpaired hearing while operating a motor vehicle, such that expert testimony is unnecessary. And secondly, Dr. Fligor's failure to consider the specific characteristics of this Plaintiff results in the unjustified extrapolation of a generality to embrace the Plaintiff. Dr. Fligor's opinion therefore devolves to no more than his subjective interpretation that since some hearing-impaired drivers may pose a greater risk of involvement in an accident, all hearing-impaired drivers pose that same risk. This is the opposite of a scientific methodology.

It should also be noted that the party offering the expert witness has the burden of establishing admissibility pursuant to *Daubert* and its progeny. The Plaintiff challenges Dr. Fligor's methodology, and the defense merely summarizes the expert's opinions at a high altitude. (Doc. 119, p. 3). The Defendant's response is devoid of any analysis of the five (5) factors articulated by the Court in *Daubert* for assessing the reliability of an expert's methodology. The Plaintiff is bound to prevail on his Motion, because the defense has failed to demonstrate that Dr.

Fligor's opinions satisfy the rigorous standards announced in *Daubert*. *See Daubert*, 509 U.S. at 593–94; FED. R. EVID.702 advisory committee notes to 2000 amendments.

Dr. Fligor's general opinions regarding occupational hearing assessments and audiograms as an evaluative tool, and the general link between hearing impairment and safe driving are not helpful to the jury in resolving any issue in dispute. The Defendant admits Dr. Fligor is not offered to speak to the Plaintiff's specific disability, and that specific disability is central to the Defendant's business necessity and direct threat defenses. To allow Dr. Fligor to offer generalized opinions regarding hearing-critical job tasks and the heightened risk presented by some hearing-impaired drivers untethered from this Plaintiff presents too great a risk of confusion to the jury. Stated differently, Dr. Fligor's opinions as framed are not relevant and are, therefore, unhelpful to the jury.

The Plaintiff also asserts that Dr. Fligor's opinion on the reasonableness of UPS's decision to disregard the FMCSA hearing exemption issued to the Plaintiff is unreliable. (Doc. 108, p. 13). The Court agrees, but for different reasons. Dr. Fligor is an audiologist. He is not an expert on how Congress sets the hearing standards set forth in 49 C.F.R. § 391.41. Nor has he demonstrated any expertise, whether by training, education, or experience, that qualifies him to offer the opinion that the FMCSA hearing exemption is "experimental." For that matter, Dr. Fligor does not even define what he means by experimental. Dr. Fligor's analysis of the FMCSA hearing exemption is limited to his recitation of various reports—

14

some supporting and others challenging—the basis for this exemption. (Doc. 108-1, ¶¶ 47–59). Since Dr. Fligor lacks expertise in the drafting and implementation of federal regulations, his recitation of otherwise hearsay publications discussing the hearing exemption lacks a valid scientific method and is unhelpful to the trier of fact.

While Dr. Fligor is a highly qualified audiologist, he may not use that expertise as a Trojan Horse to insert unqualified opinions concerning federal regulations and the Defendant's decision to disregard those regulations. Moreover, Dr. Fligor's opinion that the FMCSA hearing exemption is experimental smacks of a legal opinion which is beyond his purview and encroaches on the domain of this Court. And Dr. Fligor's opinion that the Defendant acted reasonably in failing to participate in the hearing exemption lacks a reliable methodology. Dr. Fligor's report does not provide any basis demonstrating that UPS considered the data reviewed by him and discussed in his report in reaching its opinion about the FMCSA hearing exemption. Whether UPS acted reasonably or unreasonably is determined at the time of the decision to disregard the FMCSA hearing exemption was made. Hiring an expert to collect evidence in support of the Defendant's decision-making after the fact and then substituting the expert's analysis for the Defendant's is the opposite of a valid scientific method.

## IV.   CONCLUSION

For these reasons, the Plaintiff's Motion to Exclude Dr. Fligor (Doc. 108) is **GRANTED**.

**DONE AND ORDERED** in Orlando, Florida on September 22, 2023.

_____
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

16