# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**DUSTIN BEMESDERFER,**

       **Plaintiff,**

v.                                      **Case No: 6:22-cv-270-PGB-EJK**

**UNITED PARCEL SERVICE, INC.,**

       **Defendant.**
_____/

## ORDER

This cause is before the Court on the Plaintiff's Motion to Exclude the Testimony of John J. Pinckney. (Doc. 116). The Defendant filed a Response in Opposition. (Doc. 141).

**I.    BACKGROUND**

The Plaintiff is employed by the Defendant as a package handler and is hearing-impaired. (Doc. 12). To secure a position as a delivery driver, the Plaintiff applied for and was granted a hearing exemption by the Federal Motor Carrier Safety Administration ("**FMCSA**"). (*Id.* ¶¶ 18–22, 25). The issuance of a Department of Transportation ("**DOT**") card, which includes a hearing exemption, is necessary for the Plaintiff to operate a commercial motor vehicle ("**CMV**") weighing between 10,001 and 26,000 pounds.[1] (*Id.* ¶ 40). The Plaintiff presented

---

[1] The FMCSA processes request for an exemption from the hearing standard for issuance of a commercial motor vehicle license under 49 C.F.R. § 391.41(b)(11). Section 391.11 provides the

the DOT card to Defendant's human resources department and was ultimately informed that UPS does not participate in the FMCSA hearing exemption program. (*Id.* ¶ 45). The Plaintiff asserts Defendant UPS is discriminating against him in violation of the Americans with Disabilities Act ("**ADA**") and the Florida Civil Rights Act ("**FCRA**"). (*Id.* ¶¶ 66–120). He also brings claims for retaliation. (*Id.*).

Defendant UPS asserts 28 defenses, some of which are denials and not defenses, but a few are worth noting:

> 5. Plaintiff is not a qualified disabled employee who can perform the essential functions of his job with or without a reasonable accommodation, including, inter alia, because he cannot meet the requirements of the FMCSA regulations, which is an essential function and/or qualification standard, test, or selection criteria that is job-related and consistent with business necessity.
>
> 9. Plaintiff's alleged disability posed a direct threat to the safety of Plaintiff and others that could not be eliminated by reasonable accommodation.

(Doc. 32).

The Court issued a Case Management and Scheduling Order ("**CMSO**") on June 9, 2022, and set the deadline for disclosure of expert reports as March 1, 2023 for the Plaintiff and April 3, 2023 for the Defendant. (Doc. 34). The Court amended

---

rules "establish minimum qualifications for persons who drive commercial motor vehicles." "In order to grant an exemption, the Agency must ensure that each exemption would maintain a level of safety equivalent to, or greater than, the level achieved without the exemption." See FMCSA, Hearing Exemption Application, https://www.fmcsa.dot.gov/regulations/medical/hearing-exemption-application (last updated Jan. 21, 2015). Under Section 391.41(a)(1)(i) and (ii), an individual possessing a medical examiner's certificate by virtue of having received a medical variance from FMCSA (i.e., an exemption) is qualified to operate a CMV in the United States.

the CMSO on May 2, 2023, extending the deadline for expert reports through May 31, 2023. (Doc. 94). And the Court extended the deadline for expert reports once more, setting June 21, 2023 as the deadline for all expert reports. (Doc. 99). The deadline for filing dispositive and Daubert motions remained July 21, 2023. (Doc. 94).

The Defendant tendered the expert report of Mr. John Pinckney on April 3, 2023, and submitted Mr. Pinckney's rebuttal report on June 27, 2022. (Doc. 116, p. 2). Both expert reports were originally prepared in 2022 in connection with *Murphy v. UPS*. (*Id.*). After the deadline for disclosing expert reports passed, the Defendant tendered the "supplemental" report of Mr. Pinckney which for the first time discusses the Plaintiff. (*Id.*; *see also* Doc. 116–3). The Plaintiff asserts several grounds for the exclusion of Mr. Pinckney's opinion. (*See generally* Doc. 116).

## II.   LEGAL STANDARDS

### A.   The ADA and FCRA

Since the proffered expert opinions of Mr. Pinckney pertain to the ADA, the Court will briefly address the scope of protection offered by the Act. The ADA prohibits employers from discriminating against "a qualified individual on the basis of disability in regard to job application procedures, hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Similarly, the FCRA prohibits employment discrimination on the basis of an individual's disability. *See* Fla. Stat. § 760.10(1). Because disability discrimination claims under the FCRA are analyzed using the

3

same framework as ADA claims, *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263–64 (11th Cir. 2007) (per curiam), the Court examines Plaintiff's claims together.

A plaintiff can establish a claim for disability discrimination using either direct evidence or circumstantial evidence of discrimination. *Curry v. Sec'y, Dep't of Veterans Affairs*, 518 F. App'x 957, 963 (11th Cir. 2013) (per curiam). When the plaintiff relies on circumstantial evidence to support his claim, the Court applies the *McDonnell Douglas* burden-shifting framework. *See Wascura v. City of S. Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The burden of production then shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the alleged discriminatory conduct. *Id.* Once the employer articulates a nondiscriminatory reason for the conduct in dispute, the plaintiff is left with the ultimate burden of proving that the employer's proffered nondiscriminatory explanation is not the true reason for its conduct, but merely a pretext for discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–08 (1993).

Thus, to establish a prima facie case of disability discrimination, a plaintiff must show that he: (1) is disabled; (2) is a qualified individual; and (3) was subjected to unlawful discrimination because of his disability. *Carruthers v. BSA Advert., Inc.*, 357 F.3d 1213, 1215 (11th Cir. 2004) (per curiam). And so, the burden

4

is on the plaintiff to identify an accommodation and show that the accommodation allows her to perform the essential functions of the job. *McKane v. UBS Fin. Servs., Inc.*, 363 F. App'x 679, 681 (11th Cir. 2010) (per curiam). "Performing the essential functions of a job means, among other things, being able to perform those functions without risk of serious physical harm to oneself or others." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1126 (11th Cir. 1993).

**B.**   ***Daubert***

Federal Rule of Evidence 702 permits "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to testify in the form of an opinion. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court explained that Rule 702 imposes an obligation on a trial court to act as gatekeeper, to ensure that all scientific testimony or evidence admitted is not only relevant, but reliable. Although the expert testimony at issue in *Daubert* was scientific, the Supreme Court held in *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141, 147–48 (1999), that the Daubert analysis and a trial judge's role as gatekeeper apply "not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'otherwise specialized' knowledge." District courts are charged with this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury" under the mantle of reliability that accompanies "expert testimony." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). Thus, the party offering an expert opinion has the burden of establishing three criteria: qualification,

5

reliability, and helpfulness. *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1238 (11th Cir. 2005).

First, the witness must be "qualified to testify competently regarding the matters he intends to address." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). An expert's qualifications may be evidenced by education, training, work experience, publication in the pertinent field, and membership in professional societies. *See Am. Tech. Res. v. United States*, 893 F.2d 651, 656 (3d Cir. 1990).

Second, the expert witness must employ "sufficiently reliable" scientific methods or principles to form his opinions. *Rink*, 400 F.3d at 1291. That said, a witness may also rely solely on experience if the witness explains "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Augustin*, 661 F.3d 1105, 1125 (11th Cir. 2011); FED. R. EVID. 702 advisory committee notes to 2000 amendments. The district court's "gatekeeping function requires more than simply taking the expert's word for it." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (internal quotation marks omitted).

Third, the expert's testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. Expert testimony provides such assistance where it concerns matters beyond the ken of the average juror and will allow the jury to understand the evidence or to resolve a

6

factual dispute. *See Kumho Tire*, 526 U.S. at 148–49. On the other hand, there will be no need for an expert's opinion where the jury can decide a disputed issue through the application of common sense or simple logic in light of the evidence and testimony presented at trial. *See Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001). Further, like all evidence and testimony, an expert's opinion must be relevant to an issue in the case and must hold probative value that outweighs the concerns listed in Federal Rule of Evidence 403. *Daubert*, 509 U.S. at 591.

### III.  DISCUSSION

The Plaintiff seeks to exclude Mr. Pinckney's initial and rebuttal expert reports which were prepared for the *Murphy* litigation. (Doc. 116, pp. 3–4, 6). He also moves for exclusion of Mr. Pinckney's untimely third, or supplemental, report submitted in July. (*Id.* at pp. 12–13). The Plaintiff contends Mr. Pinckney's reports from April and June 2023 are a sham in that they were prepared for a different case. (*Id.* at p. 3). Mr. Pinckney had not read or considered the Amended Complaint filed here, the Plaintiff's deposition, or any other deposition or discovery produced here. (*Id.* at pp. 3–4). Moreover, Mr. Pinckney's initial and rebuttal reports do not mention the Plaintiff or discuss accommodations not sought by the Plaintiff, and the rebuttal report offers criticism of experts not retained by this Plaintiff. (*Id.* at pp. 4–5). As such, the Plaintiff contends the first two expert reports were merely place holders which cannot justify a supplemental report. (*Id.* at p. 6).

7

The Defendant counters, somewhat incredibly, with "no harm, no foul," and asserts that some of the general opinions offered in the *Murphy* case apply equally to this case. (Doc. 141, pp. 4–5). The Defendant then argues that if the Court declines to strike the untimely "supplemental" report, "then nearly all remaining parts of Bemesderfer's motion are moot because [Mr.] Pinckney's July 3, 2023 supplemental report cures the deficiencies asserted in Bemesderfer's motion to exclude." (*Id.* at p. 5). This misses the point that the CMSO established a firm deadline for disclosure of expert reports, and the Defendant chose to use a report generated for a different case which fails to relate the expert's opinions to the Plaintiff. The fact that some of the overarching opinions offered by Mr. Pinckney might be relevant to the Plaintiff if the expert had conducted a proper analysis does not open the door to submitting a new expert report after the deadline and without leave of Court.

The Defendant asks the Court to ignore its CMSO, allow a party to disclose new expert opinions after the close of discovery, and thereby embrace a practice where the filing of any expert report—even from a different case—justifies the eleventh-hour disclosure of new opinions. The Court chooses judicial economy and compliance with the rules over the "it's better to ask for forgiveness than for permission" approach taken by the defense. This is the second time UPS elected to disclose an expert and tender reports prepared for the *Murphy* case. And the Court struck the opinions of Dr. Brian Fligor because his initial and rebuttal expert reports were not prepared for this case and lacked a valid methodology. (Doc. 159).

8

The Court also rejected the notion that Dr. Fligor's untimely third expert report met the definition of a supplemental report.[2] (*Id.* at pp. 7–8). The same outcome is mandated here.

One final observation: Defense counsel's decision to submit expert reports prepared for a different case, involving different disabilities and thus different accommodations, is beyond comprehension. Federal Rule of Evidence 26(a)(2) mandates the disclosure of expert witnesses accompanied by a written report prepared and signed by the expert. Implicit in Rule 26(a)(2) is the requirement that the report be prepared for the instant case. Accordingly, Rule 26(a)(2)(B) requires the expert to provide "a complete statement of all opinions the witness will express [in the instant case] and the basis and reasons for them," the facts or data considered by the expert, exhibits used to summarize or support the opinions, the expert's qualifications, a list of prior trial and deposition testimony, and the expert's compensation. *Id.* The Defendant's failure to comply with the Rule is inexcusable.[3] Accordingly, the Court will not consider the so-called supplemental

---

[2]  As the Court observed in striking Dr. Fligor, Federal Rule of Evidence 26(e) provides a very narrow exception to the deadline established in the CMSO. Under that rule, a party must supplement or correct—not replace or recreate—its expert disclosure "if the party learns that in some material respect the disclosure or response is incomplete or incorrect." *Id.* The unambiguous language of Rule 26(e) informs a party to supplement or correct its prior disclosure to avoid misleading the opposing party and is required only where the corrective information has not otherwise been made known to the other parties. *Id.* Rule 26(e) does not invite a second bite at the apple. (Doc. 159, p. 6).

[3]  The Court is not persuaded by the Defendant's arguments that the Plaintiff failed to adequately alert the defense to the impropriety of filing new expert opinions after the deadline or Defendant's claim that a new expert report is justified when it contains less information than the improper original report. (Doc. 141, pp. 11–12). That Mr. Pinckney offers similar

report. Plaintiff's motion to strike Mr. Pinckney's third expert disclosure is granted.

Turning back to the initial and rebuttal reports offered by Mr. Pinckney, the Plaintiff's objection to the adequacy of Pinckney's methodology and to the helpfulness of his opinions is well-taken. As discussed above, Mr. Pinckney's initial and rebuttal expert reports are untethered from the Plaintiff's specific disability and whether his disability may be reasonably accommodated without risk of serious physical harm to oneself or others. Mr. Pinckney offers five opinions, the first being his commonsense observation that "[t]he operation of a CMV is different than operating a personal car, van, pickup truck, or SUV." (Doc. 116–1, pp. 2–3). Mr. Pinckney's second opinion is that industry experience teaches that the ability to hear is important to the safe operation of a CMV. (*Id.* at p. 3). Mr. Pinckney cites the FMCSR forced whispered voice test as used to determine whether a driver has adequate hearing to safely drive. (*Id.* at p. 4). That said, expert testimony is unnecessary to explain the existence of the forced whispered voice test which is clearly stated in 49 C.F.R. § 391.41(b)(11). And, important here, Mr. Pinckney fails to relate the forced whispered voice test to the Plaintiff's disability or whether reasonable accommodation may be made without imposing an undue risk to the safety of others.

---

categories of opinions in both the *Murphy* report and the untimely expert report at issue here does not excuse the Defendant's cavalier attitude toward the CMSO and Rule 26. (*Id.* at p. 13).

Mr. Pinckney concludes his second opinion with the observation that "[t]he regulations state that these requirements do not 'prohibit an employer from requiring and enforcing more stringent requirements relating to safety of operation and employee safety and health.'" (Doc. 116–1, p. 4). Here, Mr. Pinckney is offering a legal opinion outside the scope of his expertise. His opinion sidesteps the ADA and the standard that when an employer offers a nondiscriminatory explanation for its employment decision, that decision must be analyzed to determine whether the explanation is a mere pretext for discrimination. Section 391.41(b)(11) does not permit an employer to unilaterally set the bar unnecessarily high to preclude a disabled citizen from enjoying an employment opportunity. And either Mr. Pinckney is unaware of this nuance, not being an attorney, or simply ignores its application.

Mr. Pinckney's third opinion consists of an overview of training required of CMV drivers and the employer's responsibility to provide such training. (Doc. 116–1, pp. 4–6). The opinion includes a discussion of UPS's driver-training program, but the opinion does not discuss whether the Plaintiff can satisfactorily pass the driver-training program. (*Id.*). The fourth opinion expressed by Mr. Pinckney addresses UPS's training and assessment methods. (*Id.* at pp. 6–14). After describing the components of UPS's driver-training program, Mr. Pinckney's fifth opinion is that *Mr. Murphy's* proposed accommodations would impair the integrity of UPS's training methods and create safety risks. (*Id.* at pp. 14–17). As the Plaintiff correctly notes, Mr. Murphy's disabilities are different from the

11

Plaintiff's. (Doc. 116, p. 14). The Court agrees that Mr. Pinckney fails to employ a reliable methodology in his initial expert report, because he does not consider the Plaintiff's disability and fails to explain how his general opinions and observations regarding driver-training and safety relate to the Plaintiff. As a result, his opinions do not help the jury.

The Court next considers Mr. Pinckney's rebuttal report. A rebuttal expert report is just that—a rebuttal to the opponent's expert report. One may not use a rebuttal report to craft new opinions which should have been expressed in the initial report. That said, Mr. Pinckney's rebuttal report suffers from the same flaws as his initial report, because the report was prepared for a different case. (Doc. 116–2). Ironically, in his rebuttal report, Mr. Pinckney criticizes an expert disclosed by the Plaintiff in the *Murphy* case, noting that Plaintiff's expert makes assumptions and failed to review documents and materials. (*Id.* at pp. 2–3). Mr. Pinckney criticizes that expert's opinions, stating "[the Plaintiff's expert's opinion] appears to be based on what [he] assumes a UPS delivery driver's job entails, not an opinion grounded in an actual study of the record of this case." (*Id.* at p. 3). This criticism applies equally to Mr. Pinckney's initial and rebuttal expert reports.

Additionally, Mr. Pinckney's methodology in his rebuttal report is flawed. He criticizes two of the experts retained by counsel for Mr. Murphy, but neither expert is retained for this case. (Doc. 116, p. 4; Doc. 116–2, p. 3). And as the Plaintiff rightly observes, Mr. Pinckney's opinions about Mr. Murphy's disabilities and necessary accommodations are unrelated to this Plaintiff. (Doc. 116, p. 11). It is

incumbent on the party offering the expert testimony to establish three criteria: qualification, reliability, and helpfulness. *See McClain*, 401 F.3d at 1238. The Defendant has failed to carry its burden.

## IV. CONCLUSION

For these reasons, the Plaintiff's Motion to Exclude the Testimony of Mr. Pinckney (Doc. 116) is **GRANTED**.

**DONE AND ORDERED** in Orlando, Florida on October 31, 2023.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties