UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**DUSTIN BEMESDERFER,**

      **Plaintiff,**

v.                                                     **Case No: 6:22-cv-270-PGB-EJK**

**UNITED PARCEL SERVICE, INC.,**

      **Defendant.**
_____/

## ORDER

This cause is before the Court on the following:

1. Defendant United Parcel Service, Inc.'s (**"UPS"**) Motion to Exclude Plaintiff's Economic Damages Expert (Dr. Rody Borg), (Doc. 118);

2. Plaintiff Dustin Bemesderfer's Response in Opposition, (Doc. 142);

3. UPS's Motion to Strike and Exclude the August 11, 2023, Report of Dr. Borg, (Doc. 144); and

4. Plaintiff's Response in Opposition, (Doc. 147).

Upon due consideration, UPS's *Daubert* challenge and motion to strike Dr. Borg's supplemental report are denied.

## I. STANDARD OF REVIEW[1]

Federal Rule of Evidence 702 permits "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to testify in the form

---

[1] The procedural history of this litigation has been discussed in previous orders and will not be repeated here.

of an opinion. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court explained that Rule 702 imposes an obligation on a trial court to act as gatekeeper, to ensure that all scientific testimony or evidence admitted is not only relevant, but reliable.[2] District courts are charged with this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury" under the mantle of reliability that accompanies expert testimony. *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (2002). Thus, the party offering an expert opinion has the burden of establishing three criteria: qualification, reliability, and helpfulness. *See McClain v. Metabolife Int'l, Inc.* 401 F.3d 1233, 1238 (11th Cir. 2005).

First, the witness must be "qualified to testify competently regarding the matters he intends to address." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). Indicia of an expert's qualifications may be evidenced by education, training, work experience, publication in the pertinent field, and membership in professional societies. *See Am. Tech. Res. v. United States*, 893 F.2d 651, 656 (3d Cir. 1990).

Second, the expert witness must employ "sufficiently reliable" scientific methods or principles to form his opinions. *Rink*, 400 F.3d at 1291. The reliability of an expert's method can be evaluated by considering a wide range of factors,

---

[2] Although the expert testimony at issue in *Daubert* was scientific, the Supreme Court held in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 147–48 (1999), that the *Daubert* analysis and a trial judge's role as gatekeeper apply "not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'otherwise specialized' knowledge."

2

including (1) whether the expert bases his opinion on sufficient facts or data, (2) whether the expert unjustifiably extrapolates his research to reach an unfounded conclusion, (3) whether the expert considers or accounts for contradictory studies or data, (4) the extent to which the methods used rely on the expert's subjective interpretations, and (5) whether the expert is being as careful as an expert in the same field would be in conducting professional work outside the context of paid litigation. *See Daubert*, 509 U.S. at 593–94; FED. R. EVID. 702 advisory committee notes to 2000 amendments.

Third, the expert's testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. Expert testimony helps where it concerns matters beyond the ken of the average juror and will allow the jury to understand the evidence or to resolve a factual dispute. *See Kumho Tire*, 526 U.S. at 148–49. But there will be no need for an expert's opinion where the jury can decide a disputed issue through the application of common sense or simple logic in light of the evidence and testimony presented at trial. *See Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001). Further, like all evidence and testimony, an expert's opinion must be relevant to an issue in the case and must hold probative value that outweighs the concerns listed in Federal Rule of Evidence 403. *Daubert*, 509 U.S. at 591.

The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence. *Rink*, 400 F.3d at 1292. And finally, Federal Rule of Evidence 26 imposes specific disclosure requirements upon any

3

witness "who is retained or specially employed to provide expert testimony in the case." *Prieto v. Malgor*, 361 F.3d 1313, 1317 (11th Cir. 2004); FED R. CIV. P. 26(a). The proffered expert must provide a written report "containing a complete statement of all opinions to be expressed and the basis and reasons therefor." *Prieto*, 361 F.3d at 1318. A party who violates this rule may not introduce new opinions unless the violation was "substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). That said, Rule 26 provides a very narrow exception to the deadline established in the Case Management and Scheduling Order. FED R. CIV. P. 26(e). Under that Rule, a party must supplement or correct—not replace or recreate—its expert disclosure "if the party learns that in some material respect the disclosure or response is incomplete or incorrect." *See id*.

## II. DISCUSSION

The Plaintiff has disclosed Dr. Borg as an expert who will offer opinions on past and future lost income, including retirement benefits, resulting from UPS's allegedly discriminatory failure to promote him. (Doc. 118, p. 1). Dr. Borg submitted his initial report on June 21, 2023, (Doc. 118–4 ("the **Initial Report**")), he was deposed on July 13, 2023, (Doc. 118–1), three weeks after discovery closed, (Doc. 94), and he submitted a supplemental expert report on August 11, 2023, (Doc. 142–1 (the **"Supplemental Report"**)). Defendant UPS contends Dr. Borg's opinions proffered in the Initial Report are based on a flawed methodology, because he overlooked the specific driver positions on which the Plaintiff bid. (Doc. 118, pp. 4–6). That is, Defendant argues that Dr. Borg incorrectly calculated

4

economic loss on the basis that the Plaintiff applied for a full-time rather than a part-time position. (*Id.* at p. 5). UPS also argues that Dr. Borg's opinions rest on his interpretation of the Collective Bargaining Agreement (**"CBA"**) which is outside his expertise. (*Id.* at p. 11). And UPS moves to strike the Supplemental Report, contending it replaces Dr. Borg's original opinions with new ones, and that the timing and content of the Supplemental Report is prejudicial. (Doc. 144, pp. 5, 9–11).³

### A. Dr. Borg's Initial Report

Dr. Borg calculated the Plaintiff's past and future lost wages and reduced retirement by applying standard forensic principles. First, Dr. Borg determined the Plaintiff's life expectancy and the average duration of future employment and length of retirement. (Doc. 118–4, p. 6). Next, Dr. Borg opined that the Plaintiff expected to become a UPS driver as of July 1, 2019. (*Id.* at p. 7). Dr. Borg calculated loss by comparing the Plaintiff's income as a part-time warehouse employee to the salary of a full-time driver, and the difference in the respective salaries and benefits over time. (*Id.*). Dr. Borg recounted conversations with Mr. Randy Collins, a Teamsters representative, who stated that an individual employed by UPS as a driver "can move into part-time and then convert to full-time depending on what position was 'bid' for." (*Id.*). According to Mr. Collins, "under any circumstances Mr. Bemesderfer would be at full-pay level by now," meaning as of the date of the

---

³ UPS does not challenge Dr. Borg's qualifications as an economist, and so the Court will not address that prong of the *Daubert* analysis.

5

expert report. (*Id.*). Mr. Collins further related that it was reasonable to expect between 1 and 1.5 hours per day of overtime for a 5-day workweek for drivers. (*Id.*). Based on this data, and using the anticipated pay scale, Dr. Borg calculated economic damage. (*See generally id.*). Since the CBA was in the process of being renegotiated, Dr. Borg made clear the need to revisit the damages calculation once the CBA was finalized. (*Id.* at pp. 7–8).

UPS contends Dr. Borg's economic analysis is unreliable because he did not consider the bid sheets the Plaintiff signed, meaning the type of driver position applied for, in calculating loss. (Doc. 118, p. 6). That said, Dr. Borg testified in deposition that although he could not recall "[r]ight offhand" the position Mr. Bemesderfer bid for, his analysis relies on Mr. Collins' statement that the Plaintiff would have been at full-pay level by the time Dr. Borg interviewed Mr. Collins. (Doc. 118–1, 37:8–19). Dr. Borg explained to defense counsel that, according to Mr. Collins, UPS has a "progression of pay based upon when one first bids . . . and becomes part of the driving group[, a]nd then over time . . . they progress, and then eventually move to a full-time pay scale." (*Id.*). Dr. Borg then elaborated on his economic analysis of loss based on "driver pay rates . . . taken from the UPS–Teamsters contract dated 8/1/2018 through 7/31/[20]23, page 168." (*Id.* 38:6–39:3). There is no record evidence cited by UPS showing that Dr. Borg engaged in contract interpretation when he referred to the CBA for this data.[4]

---

[4] UPS's citations to Dr. Borg's deposition, specifically pages 38:3-39:8, 42:11-43:21, 45:7-46:19, and 55:25-56:22, do not prove its claim that Dr. Borg interpreted the CBA.

6

Notably, UPS's *Daubert* challenge omits a discussion of Dr. Borg's reliance on his conversation with Mr. Collins or his discussion of the analysis of progressive pay increase as one transitions from part-time to full-time driver. Instead, UPS simplifies the issue—unrealistically so—by representing that Dr. Borg ignored the bid sheets and improperly conflated part-time and full-time bids. (Doc. 118, pp. 4–7). When in fact, as the Plaintiff explains in his response, a part-time driver is expected to advance to a full-time position, just as Mr. Collins stated. (Doc. 142, pp. 5–6). Nor does UPS contend Dr. Borg erred by relying on information received from Mr. Collins. Accordingly, Dr. Borg's opinion that the Plaintiff would have occupied the role of a full-time driver compensated at rates established in the CBA is a reliable methodology for calculating past and future lost wages and diminished retirement benefits.

Dr. Borg also testified that his loss analysis could be adjusted by the jury if more accurate evidence related to the transition from part-time to full-time is produced at trial:

> Had [the Plaintiff] moved to a part-time position . . . there would have logically been some progression to moving into full time. I can't detail out exactly how that would have worked or whatever. So, the best I could do is to assume full time, and then, ultimately, let the trier of fact determine if that should be reduced because of some period of time, or evidence to that effect, over which he would have been only part time."

(Doc. 118–1, 43:3–10). The Court notes that the jury is routinely tasked with determining whether the loss calculation offered by an economist should be adjusted based on a factual dispute over the terms and conditions of employment.

Dr. Borg's approach to loss calculation, thus, is not unreasonable and does not lack a proper methodology. To the extent that UPS is in possession of evidence casting doubt on Dr. Borg's reliance on the full-time driver rate stated in his report, that is best addressed on cross-examination.

### B. Dr. Borg's Supplemental Report

Turning to Dr. Borg's Supplemental Report, the Court finds the report does not offer "new opinions." Rather, as the Plaintiff noted in his response, the bid sheets signed by Mr. Bemesderfer are at best ambiguous. (Doc. 142, pp. 4–5). Even if Dr. Borg or Plaintiff's counsel misinterpreted the bid sheet, Dr. Borg's underlying method is sound. Moreover, the Supplemental Report is necessary to address the new UPS–Teamsters CBA, which was negotiated after he authored the Initial Report. (Doc. 142–1, p. 3). Dr. Borg then repeats in his Supplemental Report his earlier opinion that "an individual becoming a driver can move into part-time and then convert to full-time depending on what position was 'bid' for." (*Id.* at p. 4). Next, Dr. Borg repeats his conversations with Mr. Collins regarding the Plaintiff being elevated to full-time driver and the reasonably foreseeable overtime hours he would be required to work. (*Id.*). Dr. Borg concludes by reducing the total economic loss while acknowledging that the driver pay rates taken from the UPS–Teamsters contract dated 8/1/2018–7/31/2023 are impacted by the new CBA. (*Id.* at pp. 5–6).

The Supplemental Report also takes into consideration that Temporary Cover Drivers ("**TCD**") "might not get the same number of hours (regular and

8

overtime)," based on a conversation Dr. Borg had with Mr. Dave Concannon. (*Id.* at pp. 4–5). As a result, Dr. Borg concedes that he is assuming that "a TCD driver mirrors a 22.4 driver and [this] allow[s] the trier of fact to apply a modification[, o]r, UPS can provide adequate data to modify this based on records of average hours per week . . . for TCD's in the region in which Mr. Bemesderfer works." (*Id.* at p. 4). In short, nothing in the Supplemental Report constitutes a new opinion which replaces the opinions offered by Dr. Borg in the Initial Report.

Unlike the Supplemental Reports filed by Dr. Filgor and Mr. Pinckney, discussed in Docket Entries 159 and 164, Dr. Borg's Initial Report was not a mere placeholder nor is his Supplemental Report a Trojan Horse for his "real" opinions. The Supplemental Report is proper under Rule 26(e), because Dr. Borg's consideration of the renegotiated CBA and its impact on economic loss is precisely what Rule 26(e) is intended to address and remedy.

### III. CONCLUSION

It is **ORDERED AND ADJUDGED** as follows:

1. United Parcel Service, Inc.'s Motion to Exclude Plaintiff's Economic Damages Expert (Dr. Rody Borg), (Doc. 118), is **DENIED**, and

2. United Parcel Service, Inc.'s Motion to Strike and Exclude the August 11, 2023 Report of Dr. Borg, (Doc. 144), is **DENIED.**

**DONE AND ORDERED** in Orlando, Florida on November 9, 2023.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties