UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DUSTIN BEMESDERFER,

      **Plaintiff,**

v.                                                          **Case No: 6:22-cv-270-PGB-EJK**

UNITED PARCEL SERVICE,
INC.,

      **Defendant.**

_____/

## ORDER

This cause is before the Court on Defendant United Parcel Service, Inc.'s ("**UPS**") Motion for Summary Judgment. (Doc. 139 (the "**Motion**")). The Plaintiff submitted a Response in Opposition (Doc. 145), and UPS replied. (Doc. 151). Upon due consideration, the Motion is denied.

## I.    LEGAL STANDARD

To prevail on a summary judgment motion on any claim or issue, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case," and "[a]n issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014).

The movant bears the initial burden of proving that no genuine factual dispute exists. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). Where the nonmovant bears the burden of proving the issue at trial, the moving party will satisfy this initial burden "merely by pointing out to the district court that there is an absence of evidence to support an essential element of the non-moving party's case." *Thurmon v. Ga. Pac., LLC*, 650 F. App'x 752, 756 (11th Cir. 2016) (citing *Celotex*, 477 U.S. at 325).

Once the movant shows there is no genuine dispute of material fact, the burden shifts to the non-movant to prove that a genuine factual dispute exists which would preclude entry of summary judgment. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). To survive summary judgment, the non-moving party "must go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Id.* The non-movant must support its position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatories, or other materials." FED. R. CIV. P. 56(c)(1)(A). If the non-moving party fails to identify specific record evidence supporting its position, the court must enter summary judgment. FED. R. CIV. P. 56(a).

Importantly, the Court must "view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in favor of the non-movant." *Davila v. Gladden*,

777 F.3d 1198, 1203 (11th Cir. 2015) (quoting *Carter v. City of Melbourne, Fla.*, 731 F.3d 1161, 1166 (11th Cir. 2013)). At the same time, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1162 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)). Ultimately, summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.   DISCUSSION

### A.   Exhaustion of Administrative Remedies

The Defendant contends Mr. Bemesderfer failed to exhaust his administrative remedies for the five claims brought against UPS under the Americans with Disabilities Act ("**ADA**") and the Florida Civil Rights Act ("**FCRA**"). (Doc. 139, pp. 5–6). The Plaintiff alleges in the Amended Complaint that UPS failed to promote him between 2019 and 2022, and that Plaintiff's supervisor retaliated against him in 2021. (*Id.*; Doc. 12, ¶¶ 57, 70–75). That said, UPS claims the Charge of Discrimination is limited to discrimination between July and December 2020 and is silent about retaliation. (Doc. 139, p. 6). UPS reasons that since the discrimination is alleged to have occurred over four months in 2020, any discriminatory conduct taking place after December 2020 is outside the scope of the charge and such claims are not exhausted. (*Id.*). Similarly, UPS asserts the

3

Plaintiff's failure to specifically raise retaliation in the charge means that claim has

not been exhausted. (*Id.* at p. 7).

The Court has reviewed the charge of discrimination filed by the Plaintiff,

and it reads as follows:

> Since July of 2020, despite meeting all qualifications, Sunni
> Gary (disability status unknown), Human Resources Staff
> Member, has denied my promotion to Driver and refused to
> accept my [Department of Transportation] credentials
> including my [Federal Motor Carrier Safety Administration
> ("**FMCSA**")] waiver.

(Doc. 139-23, ¶ 1). Contrary to the Defendant's representation, the charge is not

limited to discriminatory conduct taking place between July and December 2020.

Rather, the Plaintiff accused UPS of engaging in discriminatory conduct "since July

2020." Thus, the Defendant is incorrect that the discriminatory conduct alleged in

the Amended Complaint is outside the scope of the charge of discrimination. The

Defendant failed to quote the charge in its briefing, and a cursory examination of

the description of discriminatory conduct charge should have led UPS to abandon

this argument.[1]

Next, UPS claims "[t]he [Equal Employment Opportunity Commission

("**EEOC**")]'s administrative investigation further confirms its scope was limited to

events occurring between July and December 2020 only." (Doc. 139, p. 7). UPS

points to Exhibit 24 of the Motion to support this contention. (*Id.*). Exhibit 24 is

84-pages long, and the Defendant fails to offer a pinpoint citation to support its

---

[1]   UPS alleges the Plaintiff "complains *only* about a failure to promote between the distinct dates
     of July and December 2020." (Doc. 139, p. 6).

argument. The Court will not search an extensive document to help counsel perform their function. *See United States v. Dunkel*, 927 F.2d 955 (7th Cir. 1991) (per curiam) ("Judges are not like pigs, hunting for truffles buried in briefs."). Therefore, the Defendant's contention regarding the scope of the EEOC's investigation is unsupported.

Finally, UPS asserts that the Plaintiff did not complain about retaliation or harassment at all, and as such failed to exhaust his administrative remedy. (Doc. 139, p. 7). The charge of discrimination is dated December 8, 2020, (Doc. 139-23), and the Plaintiff claims he was retaliated against starting the Fall of 2021, (Doc. 12, ¶ 57). Since the retaliation claim could not have been brought contemporaneous with the discrimination charge, the Defendant suggests the charge should have been amended. (Doc. 139, p. 7). The Eleventh Circuit, however, has resolved this argument against the Defendant. Last September, the Court reversed a trial judge who dismissed the plaintiff's retaliation claim for failure to exhaust administrative remedies, holding that "under *Batson v. Salvation Army*, 897 F.3d 1320 (11th Cir. 2018), [appellant's] ADA retaliation claim could have reasonably grown out of his charge of discrimination." *Sugg v. City of Sunrise*, No. 20-13884, 2022 WL 4296992, at *5–6 (11th Cir. Sep. 19, 2022). Accordingly, the exhaustion requirement does not apply to retaliation claims that grow out of earlier charges, as is alleged to have occurred here.

For these reasons, the Defendant's argument that Plaintiff failed to exhaust administrative remedies is rejected. The Court need not dwell on whether ADA exhaustion requirements apply to state law claims.

## B.  Failure to bid for a driver position in 2020

Defendant UPS argues that Mr. Bemesderfer applied for a driver position in 2019 and failed to apply again between August 2019 and December 2021. (Doc. 139, pp. 8–9). UPS cites bid sheets signed by the Plaintiff on August 8, 2019 and August 22, 2019, (*id.* at p. 9, n.10), and the Plaintiff's deposition where Mr. Bemesderfer admitted being unable to recall signing bid sheets after August 2019, (*id.* at p. 9, n.9). Accordingly, UPS contends Counts I, III, and IV must be dismissed as time-barred. (*Id.* at p. 9). UPS also moves for summary judgment, because the Plaintiff lacked seniority and was, therefore, unqualified.[2] (*Id.* at p. 8).

The Plaintiff argues there is an issue of material fact related to which driver positions he applied for and when. (Doc. 145, p. 5). Both parties cite the Plaintiff's deposition, and the Court finds UPS's citation mischaracterizes the Plaintiff's testimony. UPS is correct that the Plaintiff at first stated he could not recall if he signed bid sheets for driver positions between August 2019 and December 2021.

---

[2]  UPS cites the Collective Bargaining Agreement ("**CBA**"), Article 48, sections 1 and 6, but does not direct the Court to specific language supporting its contention that UPS is required to select candidates based on relative seniority. (Doc. 139, p. 8 (citing Doc. 139-6)). At any rate, the Plaintiff does not appear to contest that seniority is relevant—but not dispositive—to one's qualification for the driver position. (Doc. 145, p. 8). The Court makes this observation, because citing exhibits without specificity is improper and unhelpful when seeking summary judgment.

(Doc. 139, p. 9). Yet UPS skips over the portion of the transcript in which the Plaintiff engages in the following exchange with the defense:

> Q:      Okay. And so, to your knowledge, did you sign a bid sheet between August 2019 and December '21 related to driving at all?
>
> A:      I signed them, yeah.
>
> Q:      Okay. You just didn't take photographs of them?
>
> A:      The only thing I can remember is those two [photographs] during 2019.

(Doc. 139-8, 116:12–19).

The Plaintiff also testified that he started taking photographs of the bid sheets in 2020 and "maybe . . . missed one per year."[3] (*Id.* 115:20–23). Accordingly, the Plaintiff testified that he signed bid sheets between August 2019 and December 2021 and may have failed to photograph the bid sheet once a year. The Plaintiff's deposition testimony falls far short of an admission that he did not sign bid sheets after 2020. The Court is mindful that weighing the evidence and judging the credibility of witnesses are quintessential functions for the trier of fact, not the Court. *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993). In ruling on a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's]

---

3    UPS had no established procedure for the preservation of bid sheets, which is why it cites to bid sheets produced by the Plaintiff. But for the Plaintiff's presence of mind to photograph some of the bid sheets, there would be no record. Having failed to enact basic document retention policies, UPS now seeks to capitalize on its lax recordkeeping. UPS cannot satisfy its burden of proving the absence of a material fact by failing to keep records. To find otherwise would be absurd and motivates document destruction as a defense tactic.

favor." *Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Drawing all reasonable inferences in the light most favorable to Plaintiff, the Court finds that genuine factual disputes remain as to whether Plaintiff bid for driver positions between August 2019 and December 2021.[4]

As for UPS's argument that the Plaintiff lacked sufficient seniority to qualify for the driver positions, the Court agrees with the Plaintiff that there is a material issue of disputed fact on this point. (Doc. 145, p. 8). UPS fails to demonstrate that the driver positions for which the Plaintiff applied were filled by qualified employees with greater seniority. For example, the Plaintiff testified that David Nutter and Roger Haron are employees who were offered driver positions despite the Plaintiff's higher seniority date. (*Id.*). And, as the Plaintiff aptly notes, an employee with greater seniority can be offered a position and not accept it, making the Plaintiff potentially the most senior applicant. As a result, summary judgment is unwarranted.

### C. Business Necessity Affirmative Defense

UPS argues it is entitled to summary judgment on Counts I and III of the Amended Complaint alleging disparate treatment for failure to promote. (Doc. 139, p. 10). The Defendant asserts two grounds: first, that the Supreme Court's decision in *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555 (1999), controls and renders moot the Plaintiff's challenge to UPS's policy to adopt the base-level hearing ("**BLH**")

---

[4]   The Court need not reach Plaintiff's argument that he had a justifiable belief that applying for driver positions in 2020 and 2021 was futile due to the Defendant's discriminatory practices. (Doc. 145, p. 7).

standard while opting out of the FMCSA hearing exemption program. (*Id.*). The Court has rejected this argument in denying the Defendant's Motion for Judgment on the Pleadings.[5] (Docs. 91, 161). UPS also contends it is entitled to prevail under the business necessity defense. (Doc. 139, pp. 10-17).

"To benefit from the [business necessity] affirmative defense, an employer must prove that the pertinent qualification standard is job-related and consistent with business necessity." *Allmond v. Akal Sec. Inc.*, 558 F.3d 1312, 1316–17 (11th Cir. 2009). Job-relatedness and business necessity are distinct concepts. *Id.* Job-relatedness "is used in analyzing the questions or subject matter contained in a test or criteria used by an employer in making hiring or promotional decision making." *Id.* at 1317. Thus, "[f]or a qualification to be 'job-related,' 'the employer must demonstrate that the qualification standard is necessary and related to 'the specific skills and physical requirements of the sought-after position.'" *See Atkins v. Salazar*, 677 F.3d 667, 682 (5th Cir. 2011) (quoting *Cripe v. City of San Jose*, 261 F.3d 877, 890 (9th Cir. 2001)).

Business necessity "analyzes whether there is a business reason that makes necessary the use by an employer of a test or criteria in hiring or promotional decision making." *Allmond*, 558 F.3d at 1317. "[F]or a qualification standard to be 'consistent with business necessity,' the employer must show that it 'substantially promotes' the business's needs." *Atkins*, 677 F.3d at 682 (quoting *Bates v. UPS,*

---

[5]   The undersigned found that the FMCSA hearing exemption is distinct from a waiver, and an employer cannot simply ignore the exemption. (Doc. 161, p. 4). As a result, the Court found *Albertson's* is not controlling. (*Id.*).

*Inc.*, 511 F.3d 974, 996 (9th Cir. 2007)). And so, the affirmative defense is available when a qualification like the BLH test is necessary and related to the specific skills and physical requirements of the position, and the employer can show it substantially promotes the business's needs.[6] If an employer can establish a legitimate business necessity, the burden shifts to the employee to show a reasonable accommodation would have enabled the employee to satisfy the challenged selection criterion. *Allmond*, 558 F.3d at 1317.

UPS submits the BLH standard is job-related because federal regulatory standards provide a trustworthy benchmark for assessing safety-based business necessity claims. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1121 (11th Cir. 1993). However, *Fitzpatrick* does not stand for such a broad principle. To the contrary, *Fitzpatrick* teaches that whether a federal regulatory standard, such as the Occupational Safety and Health Administration ("**OSHA**") standard for beard length for firefighters wearing self-contained breathing apparatus (**"SCBA"**), constitutes a trustworthy benchmark for assessing safety and thus business necessity is fact specific.

---

[6]   The parties disagree over the employer's burden of proving the business necessity defense. The general rule is that the employer's burden "is generally quite high," but the employer enjoys a "significantly lowered" burden when "the job clearly requires a high degree of skill and the economic and human risks involved in hiring an unqualified applicant are great." *Allmond*, 558 F.3d at 1317. The Court agrees with the Plaintiff that the driver positions for which he applied are dissimilar to the court security officer and firefighter positions in *Allmond*, 558 F.3d at 1317, and *Hamer v. Atlanta*, 872 F.2d 1521, 1535 (11th Cir. 1989), such that the higher burden of proof applies. (*See* Doc. 145, pp. 8–9, n.2). No matter what, for the reasons discussed in this Order, UPS would not prevail even applying the reduced burden of proof.

In *Fitzpatrick*, the plaintiff claimed the City of Atlanta's (the "**City**") no-beard policy had a disparate impact on African American firefighters who suffer from bacterial disorder making saving impossible. *Fitzpatrick*, 2 F.3d at 1113. The City's business necessity defense was supported by an expert witness, Kevin Downes, who opined the SCBA should be worn without facial hair contacting the sealing surface of the face piece. *Id.* at 1119. The expert relied on studies conducted by the American National Standards Institute, the National Institute for Occupational Safety and Health, and OSHA. *Id.* at 1120. The firefighters countered with anecdotal evidence that no adverse incidents had been reported during the six-year period the City allowed firefighters to wear beards. *Id.* Based on the competing evidence, the Court upheld the business necessity defense. *Id.*

In *Allmond* the Plaintiff served as a contract employee with the United States Marshal's Service to provide protective services at a federal courthouse and was terminated when he failed a hearing test. 558 F.3d at 1315. The defendant presented testimony from Dr. Richard Miller, the then Director of Law Enforcement Medical Programs for the Office of Federal Occupational Health, who conducted a comprehensive study following the Oklahoma City bombing. *Id.* Dr. Miller concluded that security personnel must be able to clearly understand verbal directions in times of crisis, including communications spoken face-to-face, via telephone and radio, and outside the range of one's sight. *Id.* The Court found "the government sponsored a detailed analysis of the security officer position to identify the essential functions of the job and the medical qualifications necessary to

perform it." *Id.* at 1317. The Court sustained the prohibition against use of hearing aids as consistent with business necessity because hearing aids may malfunction, break, or become dislodged. *Id.*

UPS asserts that it has adopted the BLH standard and claims that, "[b]ecause the FMSCA may waive the BLH standard for deaf drivers based on their personal driving record, the BLH standard does not necessarily represent the regulatory 'floor' in all circumstances." (Doc. 139, p. 13) UPS concludes that its decision to adopt the BLH criterion is comparable to *Fitzpatrick* where the City adopted the OSHA standard despite not being required to do so. (*Id.*). There are two problems with the Defendant's reasoning. First, there is no evidence the FMSCA hearing exemption is based merely on one's personal driving record.[7] Second, in *Fitzpatrick*, the City proved the OSHA no-beard criterion was job-related and necessary, as those terms are understood. As the Plaintiff correctly notes, "UPS has not identified one essential function to which the [BLH] physical qualification standard is sufficiently tailored." (Doc. 145, p. 10).

The Plaintiff goes further and cites to the record to show that he can speak, hear with the use of hearing aids, and lipread. (Doc. 145, p. 11 (citing Doc. 108-8, 177:19–178:7, 238:16–239:4, 239:7–8; Doc. 116-9, 15:8–23; Doc. 137, ¶ 15; Doc. 138, ¶ 1)). Accordingly, the Plaintiff can successfully communicate with non-

---

7    The Defendant's cursory reference to "validity studies" from the 1970s and citation to expert witness Dr. Brian Filgor—since struck pursuant to a *Daubert* challenge—is not enough to demonstrate the BLH is job-related and is thus insufficient to carry the employer's burden of proving business necessity under either the heightened or lessor standard. (Doc. 139, pp. 13–14).

hearing-impaired people such as UPS customers, public safety personnel, and other members of the public. (*Id.* (citing Doc. 137; Doc. 138, ¶ 5; Doc. 138-2, ¶ 4)). And the Plaintiff identifies five deaf individuals with FMCSA exemptions employed by UPS as package car drivers. (*Id.* (citing Doc. 108-10, 9:6–7, 17:10; Doc. 108-11, 11:5–17; Doc. 145, p. 11). Plaintiff argues since the five deaf employees can successfully perform their jobs, the BLH qualification is not job-related. (*Id.*).

The Court finds UPS has failed to show the absence of a genuine issue of material fact over whether the BLH criterion is job-related. While the Court need not address the business necessity prong of the affirmative defense, it will do so for completeness. UPS argues it adopted the BLH standard to address safety risks, relying almost entirely on the expert reports and testimony of Brian Fligor and John Pinckney. (Doc. 139, pp. 15–16). The Court, however, granted the Plaintiff's *Daubert* challenges as to these experts, and the Court may not consider the Defendant's citation to their initial, and highly improper, expert reports. (Docs. 159, 164). Since UPS has failed to carry its burden on the business necessity defense, the Court need not address whether the Plaintiff identified a reasonable accommodation.

### D.    FMCSA's hearing exemption was a nullity

UPS claims the FMCSA's issuance of a hearing exemption is a legal nullity because the agency action was arbitrary and capricious. (Doc. 139, p. 17). The Court notes UPS failed to raise this defense in its Answer and Affirmative Defenses and has waived the defense. (Doc. 32). UPS proffers its interpretation of the grounds

upon which the FMCSA issued a hearing exemption to the Plaintiff, citing generally to 85 FED. REG. 30.011, but without specific citation to support its argument. Counsel then proffers a diagram of the analytical steps "the FMSCA needed to measure versus what it actually measured," without citing legal authority or expert testimony in support of the proffer. (Doc. 139, pp. 19–20). Moreover, the Plaintiff is correct that the Defendant's argument invoking the Administrative Procedure Act cannot be asserted against a private party, and the FMSCA is not a party to this litigation. *See Shell Gulf of Mex. Inc. v. Ctr. For Biological Diversity, Inc.*, 771 F.3d 632, 636 (9th Cir. 2014). UPS failed to join the FMCSA, did not challenge the Plaintiff's application for a hearing exemption, and did not raise this defense in its Answer and Affirmative Defenses. Summary judgment is therefore not proper on this ground.

### E.      Retaliation, Lack of Knowledge, and Temporal Gap

The Defendant submits Counts II and V asserting retaliation fail, because the Plaintiff cannot make a prima facie showing of retaliatory intent. (Doc. 139, p. 21). UPS does not dispute that the Plaintiff was engaged in statutorily protected expression, or that he suffered an adverse action. (*Id.*). Rather, UPS claims Mr. Bemesderfer cannot show a causal relation between the protected activity and the adverse action because the time between those events is too great. (*Id.*). UPS also claims the decisionmaker was unaware of the protected activities. (*Id.* at p. 22). That is, Mr. Kenny Hallam, the Plaintiff's preload supervisor, was not involved in

driver bids or the grievance process and professed lack of knowledge concerning Plaintiff's EEOC charge. (*Id.* (quoting Doc. 139-26, 29:5–31:11, 32:1–19)).[8]

The Plaintiff counters that there is a dispute of material fact as to Mr. Hallam's knowledge of his protected activity because the Plaintiff asked Mr. Hallam who he should contact to apply for a driver position. (Doc. 145 (quoting Doc. 139-8, 48:7–21)). The Plaintiff also notes that he filed an internal complaint and a union grievance against Mr. Hallam in December 2021. (Doc. 137, ¶¶ 20, 24–25; Doc. 138, ¶ 6). And the Plaintiff testified that after he unsuccessfully applied for the driver position, Mr. Hallam treated him differently than other employees when each hour Mr. Hallam stood about one foot away and criticized him for working too slowly. (Doc. 145, pp. 17–18 (quoting Doc. 139-8, 55:1–19)). Mr. Hallam also required the Plaintiff to handle heavy packages while having an injured shoulder, and he would not wear a mask during COVID and stood behind the Plaintiff breathing on him. (Doc. 139-8, 55:1–19).

The jury is tasked with making credibility determinations, including whether they believe Mr. Hallam when he professes ignorance of the Plaintiff having applied for and been denied a driver position or the existence of Plaintiff's EEOC claim. The jury must also determine whether Mr. Hallam's treatment of the Plaintiff constitutes retaliation, is simply bad management, or did not happen.

---

[8]   Defense counsel cites "Exhibit X" for Mr. Hallam's deposition testimony, yet there is no Exhibit X attached to the Motion. Fortunately, the Plaintiff directed the Court to Doc. 139-26, otherwise, Mr. Hallam's testimony would not have been considered. Greater care is expected of lawyers appearing in federal court.

Thus, there is a material issue of fact about Mr. Hallam's knowledge that the Plaintiff engaged in protected activity and was thereafter subjected to retaliation.

UPS also argues the Plaintiff's protected activity ended in December 2020, and the retaliation began in the fall of 2021 with the gap being too great to be actionable. (Doc. 139, pp. 22–23). It is true the nexus or temporal proximity between the protected activity and the adverse action must not be completely unrelated. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). And, "[i]f there is substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law. *Id.* (citation omitted). That said, the temporal connection between the protected activities here and the alleged retaliation is not as clear-cut as UPS suggests. The logs used to document applications for driver positions are poorly maintained by UPS, and the Defendant's policy to disregard FMCSA hearing exemptions is a continuing harm. The Plaintiff did not relent in his desire to obtain a driver position as evidence by his receipt of a hearing exemption in May 2020 and May 2022. (Doc. 137, ¶ 22). A reasonable jury may find the Plaintiff's protected activity did not end in December 2020, thereby narrowing the temporal gap.

## F.    Preemption of FCRA Retaliation Claims

Finally, UPS argues Counts III and IV alleging retaliation should be dismissed, because his state-law claims are preempted by his CBA. This argument rests on a faulty premise. UPS contends the Plaintiff's retaliation claims are, in

reality, a dispute concerning the construction of the CBA over which federal labor law provides exclusive federal jurisdiction. (Doc. 139, pp. 23–24). This is simply wrong, and UPS fails to cite a single case holding that a retaliation claim arising from disability discrimination and brought under the FCRA fails when the plaintiff is a member of a union and subject to a CBA.

The claim of retaliation rests on independent state law and does not require interpretation of the CBA. To prevail on the retaliation claim, the Plaintiff is required to satisfy three elements: (1) that "he engaged in a statutorily protected expression, (2) he suffered an adverse employment action, and (3) there was a causal link between the adverse action and [his] protected expression." *Parker v. Econ. Opportunity for Savannah-Chatham City. Area, Inc.*, 587 F. App'x 631, 632 (11th Cir. 2014). And the failure-to-promote claim is not predicated on an interpretation of the CBA. Rather, the failure-to-promote claim rests on whether the FMCSA hearing exemption issued to the Plaintiff rendered him qualified for the driver position for which he applied and whether UPS discriminated in his non-selection. (Doc. 12, ¶¶ 14–48, 66–79). The CBA is mentioned in the Amended Complaint simply because the Plaintiff was needed to exhaust the grievance procedure before suing. (*Id.* ¶ 49).

Similarly, the retaliation claim involves a purely factual inquiry detached from the CBA. Accordingly, preemption under Section 301 of the Labor Management Relations Act does not apply. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 406–07 (1988); *see also Atwater v. Nat'l Football Players*

*Ass'n*, 626 F.3d 1170, 1176 (11th Cir. 2010) ("[I]n determining whether § 301 preempts a state-law cause of action … consider whether the claim arises from a CBA . . . or whether 'the resolution of [the] state-law claim depends upon the meaning of a collective-bargaining agreement.'"). Accordingly, the Plaintiff's claims are not preempted by Section 301.

## III.    CONCLUSION

For these reasons, Defendant United Parcel Service, Inc.'s Motion for Summary Judgment (Doc. 139) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on November 17, 2023.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties