**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DUSTIN BEMESDERFER,**

     **Plaintiff,**

**vs.**                          **Case No: 6:22-cv-00270-PGB-EJK**

**UNITED PARCEL SERVICES,**
**INC.,**

     **Defendant.**

_____/

**PLAINTIFF'S OMNIBUS MOTION IN LIMINE**

Plaintiff, Dustin Bemesderfer, files this motion in limine to exclude certain evidence, argument, or suggestion.

**I.**     **Evidence, argument, or suggestion the Parties agree to exclude.**

The Parties agree that the Court should exclude the following evidence, argument, or suggestion:

1. Any evidence, argument, or suggestion relating to any settlement discussions or negotiations.

2. Any evidence, argument, or suggestion that Mr. Bemesderfer and his attorneys have a contingent fee arrangement.

3. Any evidence, argument, or suggestion regarding the size, financial status, resources, or location of the parties' attorneys' law firms.

4.  Any evidence, argument or suggestion in the presence of the jury regarding statutory caps on compensatory and punitive damages

5.  Any information, documents, or witnesses not previously disclosed on the Joint Pre-Trial Statement and exhibits thereto, except documents used for rebuttal or impeachment.

**II.** __Evidence, argument, or suggestion the Parties do not agree to exclude.__

The Parties do not agree on whether the Court should exclude the following evidence, argument, or suggestion:

1.  **Evidence, argument, or suggestion questioning the propriety or validity of the FMCSA hearing exemption, the FMCSA hearing exemption program, the studies cited by the FMCSA in support of the FMCSA hearing exemption program, or the process by which Mr. Bemesderfer obtained his FMCSA hearing exemptions.**

The Court should prohibit any evidence, argument, or suggestion questioning the propriety or validity of the FMCSA hearing exemption, the FMCSA hearing exemption program, the studies cited by the FMCSA in support of the FMCSA hearing exemption program, or the process by which Mr. Bemesderfer obtained his FMCSA hearing exemptions. The Court held that the FMCSA hearing exemption program was not experimental. (D.E. 91). The Court also held that Mr. Bemesderfer "holds the Hearing Exemption and thus the necessary license for the job, meaning he is a qualified individual." (D.E. 91 at 6). Under the law-of-the-case doctrine, the Court's decision is binding at all subsequent stages in this litigation. *See United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997) ("Under the law-of-the-case doctrine, an issue decided at one stage of a case is binding at later stages of the same

case."). Therefore, evidence, argument, or suggestion to the contrary is irrelevant and would confuse the issues, mislead the jury, cause undue delay, and waste time. FED. R. EVID. 401; FED. R. EVID. 402; FED. R. EVID. 403.

In addition, UPS's summary judgment briefs indicate that its arguments regarding the FMCSA hearing exemption program, the studies cited by the FMCSA in support of the FMCSA hearing exemption program, or the process by which Mr. Bemesderfer obtained his FMCSA hearing exemptions rely on the testimony, opinions, and reports of Brian Fligor and John J. Pinckney. However, the Court granted Mr. Bemesderfer's motions to exclude Fligor and Pinckney pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993).* (D.E. 159; D.E. 164). Therefore, UPS's arguments regarding the FMCSA hearing exemption program, the studies cited by the FMCSA in support of the FMCSA hearing exemption program, or the process by which Mr. Bemesderfer obtained his FMCSA hearing exemptions will not have any foundation. FED. R. EVID. 401; FED. R. EVID. 901.

2.  **Any evidence, argument, or suggestion that the FMCSA hearing exemption program is experimental.**

The Court should prohibit any evidence, argument, or suggestion that the FMCSA hearing exemption program is experimental. The Court held that the FMCSA hearing exemption program was not experimental. (D.E. 91). Therefore, evidence, argument, or suggestion to the contrary is irrelevant and would confuse the

issues, mislead the jury, cause undue delay, and waste time. FED. R. EVID. 401; FED. R. EVID. 402; FED. R. EVID. 403.

   3.   **Any evidence, argument, or suggestion regarding *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 558 (1999).**

The Court should prohibit any evidence, argument, or suggestion regarding *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 558 (1999). The Court held that "*Albertson's* is inapposite and does not dictate resolution of this dispute." (D.E. 91 at 6; *see also* D.E. 170 at 8-9). Therefore, evidence, argument, or suggestion to the contrary is irrelevant and would confuse the issues, mislead the jury, cause undue delay, and waste time. FED. R. EVID. 401; FED. R. EVID. 402; FED. R. EVID. 403.

   4.   **Any testimony, opinions, or reports and attachments thereto of Brian Fligor.**

The Court should prohibit any testimony, opinions, or reports and attachments thereto of Brian Fligor. The Court granted Mr. Bemesderfer's motion to exclude Brian Fligor pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). (D.E. 159). In addition, without Fligor's testimony, there will not be any foundation to the reports and studies attached to his expert report. FED. R. EVID. 901.

   5.   **Any testimony, opinions, or reports and attachments thereto of John J. Pinckney.**

The Court should prohibit any testimony, opinions, or reports and attachments thereto of John J. Pinckney. The Court granted Mr. Bemesderfer's motion to exclude John J. Pinckney pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). (D.E. 164). In addition, without Pinckney's testimony, there will not be any foundation to the reports and studies attached to his expert report. FED. R. EVID. 401; FED. R. EVID. 901.

6. **Any evidence, argument, or suggestion that Mr. Bemesderfer posed a direct threat to the safety of himself or others as a package car driver.**

The Court should prohibit any evidence, argument, or suggestion that Mr. Bemesderfer posed a direct threat to the safety of himself or others as a package car driver. To assert a direct threat defense, "an employer must point to particularized facts about the specific person's condition to support its decision" that the person, in fact, posed a direct threat. *Lowe v. Ala. Power Co.*, 244 F.3d 1305, 1308 (11th Cir. 2001). "[A] good-faith belief that a significant risk of harm exists is insufficient if it is not grounded in medical or other objective, scientific evidence." *Id.* In this case, UPS explicitly admits it did not conduct an individualized assessment of Mr. Bemesderfer. (D.E. 116.8, 61:5-14). In fact, UPS's own corporate representative testified that it did not specifically evaluate if Mr. Bemesderfer was a direct threat. (D.E. 116.8, 60:19-24). Because UPS has been unable to point to any evidence throughout discovery that Mr. Bemesderfer was a direct threat and therefore cannot assert a good faith belief that he was a direct threat based on an individualized assessment, any attempt to introduce such evidence would be irrelevant. FED. R. EVID. 401; FED. R. EVID. 402.

7. **Any evidence, argument, or suggestion that UPS's policy of refusing to accept the FMCSA hearing exemption is job-related and consistent with business necessity.**

The Court should prohibit any evidence, argument, or suggestion that UPS's policy of refusing to accept the FMCSA hearing exemption is job-related and consistent with business necessity. In denying UPS's motion for summary judgment, the Court held  that "UPS has failed to carry its burden on the business necessity defense." (D.E. 170 at 13). Therefore, any evidence, argument, or suggestion that UPS's policy of refusing to accept the FMCSA hearing exemption is job-related and consistent with business necessity would be irrelevant and would confuse the issues, mislead the jury, cause undue delay, and waste time. FED. R. EVID. 401; FED. R. EVID. 402; FED. R. EVID. 403.

8. **Any evidence, argument, or suggestion that the FMSCR's physical qualification standard for hearing at 49 C.F.R. § 391.41(b)(11) is job-related and consistent with business necessity.**

The Court should prohibit any evidence, argument, or suggestion that the FMSCR's physical qualification standard for hearing at 49 C.F.R. § 391.41(b)(11) is job-related and consistent with business necessity. In denying UPS's motion for summary judgment, the Court held  that "UPS has failed to carry its burden on the business necessity defense." (D.E. 170 at 13). Therefore, any evidence, argument, or suggestion that UPS's policy of refusing to accept that the FMSCR's physical qualification standard for hearing at 49 C.F.R. § 391.41(b)(11) is job-related and consistent with business necessity would be irrelevant and would confuse the issues, mislead the jury, cause undue delay, and waste time. FED. R. EVID. 401; FED. R. EVID. 402; FED. R. EVID. 403.

9. **Any evidence, argument, or suggestion that UPS has the authority, right, or ability to refuse to participate in the FMCSA's hearing exemption program or accept FMCSA hearing exemptions.**

The Court should prohibit any evidence, argument, or suggestion that UPS has the authority, right, or ability to refuse to participate in the FMCSA's hearing exemption program or accept FMCSA hearing exemptions. The Court rejected UPS's argument that it "is free to disregard the exemption and deny Mr. Bemesderfer the position because he failed the hearing test" and that "[i]t simply does not matter that Plaintiff obtained an individual exemption from that standard." (D.E. 91 at 5). The Court then held that "an employer cannot simply ignore the exemption. Stated differently, the hearing exemption once issued establishes that the individual is able to perform the essential functions of the employment position he seeks with or without reasonable accommodation." (D.E. 91 at 5). Therefore, any evidence, argument, or suggestion to the contrary would be irrelevant and would confuse the issues, mislead the jury, cause undue delay, and waste time. FED. R. EVID. 401; FED. R. EVID. 402; FED. R. EVID. 403.

10. **Any evidence, argument, or suggestion that modifying UPS's driver training program for deaf employees would have posed an undue hardship for UPS.**

The Court should prohibit any evidence, argument, or suggestion that modifying UPS's driver training program for deaf employees would have posed an undue hardship for UPS. The Court excluded both of UPS's expert witnesses. (D.E. 159; D.E. 164). As such, UPS does not have any credible witnesses who can testify to the hardship any modifications would pose. Therefore, any evidence, argument, or

suggestion that modifying UPS's driver training program for deaf employees would have posed an undue hardship for UPS would be irrelevant and would confuse the issues, mislead the jury, cause undue delay, and waste time. FED. R. EVID. 401; FED. R. EVID. 402; FED. R. EVID. 403.

11. **Any evidence, argument, or suggestion regarding the financial consequences of any trucking accident, real or hypothetical/imagined, or any impact hiring deaf drivers may have upon UPS's insurance rates.**

The Court should prohibit any evidence, argument, or suggestion regarding the financial consequences of any trucking accident, real or hypothetical/imagined, or any impact hiring deaf drivers may have upon UPS's insurance rates. UPS does not have any expert witnesses who may testify about the financial consequences of any trucking accident, real or hypothetical/imagined, or any impact hiring deaf drivers may have upon UPS's insurance rates. Therefore, any evidence, argument, or suggestion regarding the financial consequences of any trucking accident, real or hypothetical/imaged, or any impact hiring deaf drivers may have upon UPS's insurance rates will not have any foundation. FED. R. EVID. 901. In addition, UPS objected to Mr. Bemesderfer's Rule 30(b)(6) notice seeking testimony on "the extent to which Defendant's insurance coverage, premiums or carrier(s) changed once Defendant implemented the October 2019 nation-wide policy not to accept the FMCSA hearing waiver." (D.E. 100.3 at 2-4). Specifically, UPS objected that such information was "proprietary, private, sensitive, and/or confidential." (D.E. 100.3 at 4). UPS must be prevented from revoking those objections during trial, after months

of asserting its objections, and well beyond the close of discovery. FED. R. CIV. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). Finally, UPS's corporate representative testified that its insurance premiums were not impacted by deaf drivers with hearing exemptions:

> 7  Q   I'd like to ask you some questions about UPS's
> 8       insurance coverage.
> 9            Is UPS self-insured?
> 10  A   Yes.
> 11  Q   So there's no insurance company that insures UPS for
> 12      liability coverage?
> 13  A   Liberty Mutual is our TPA.
> 14  Q   Okay.  Does Liberty Mutual have lower premiums for
> 15      UPS now that it no longer continues to employ deaf
> 16      and hard of hearing people with hearing exemptions as
> 17      drivers?
> 18  A   No.
> 19  Q   Was there any change or modification in the insurance
> 20      premiums because UPS started accepting the hearing
> 21      exemption in 2013 to 2019?
> 22  A   No.
> 23  Q   Has Liberty Mutual ever told UPS that it would reduce
> 24      its premiums if it did not employ drivers with
> 25      hearing exemptions?
>
> 1  A   No.
> 2  Q   Has Liberty Mutual provided any information to UPS
> 3      about accident rates or other data regarding drivers
> 4      with hearing exemptions?
> 5  A   No.

(D.E. 116.8 at 38:17-39:5). Therefore, evidence, argument, or suggestion to the contrary would confuse the issues, mislead the jury, cause undue delay, and waste time. Fed. R. Evid. 403.

12. **Any evidence, argument, or suggestion regarding the timing or circumstances under which Mr. Bemesderfer employed his attorneys.**

The Court should prohibit any evidence, argument, or suggestion regarding the timing or circumstances under which Mr. Bemesderfer employed his attorneys. The timing and circumstances under which Mr. Bemesderfer employed his attorneys are irrelevant and would cause unfair prejudice. FED. R. EVID. 401; FED. R. EVID. 402; FED. R. EVID. 403; *see also Miller ex rel. Miller v. Ford Motor Co.*, No. 2:01-cv-545-FTM-29DNF, 2004 WL 4054843, at *6 (M.D. Fla. July 22, 2004) ("Evidence regarding the time or circumstances under which plaintiff employed her attorneys is inadmissible without a prior order of the Court. The motion is granted to this extent.").

13. **Any evidence, argument, or suggestion that UPS is sorry for or regrets the occurrences in question and consequent discrimination to Mr. Bemesderfer.**

The Court should prohibit any evidence, argument, or suggestion that UPS is sorry for or regrets the occurrences in question and consequent discrimination to Mr. Bemesderfer. UPS's remorse is irrelevant and would cause unfair prejudice. FED. R. EVID. 401; FED. R. EVID. 402; FED. R. EVID. 40; *see also Jenkins v. Corizon Health Inc.*, 584 F. Supp. 3d 1364, 1374 (S.D. Ga. 2022) (The Court finds that statements of remorse are wholly irrelevant to the issues in this case, and Plaintiffs' motion is GRANTED on this issue.").

14. **Any testimony on topics for which UPS refused to permit testimony on the basis of the attorney-client privilege or work product privilege.**

The Court should prohibit any testimony on topics for which UPS refused to permit testimony on the basis of the attorney-client privilege or work product privilege. Throughout this case, UPS has continually objected to evidence concerning the CALM Committee's deliberations regarding, or reasons for adopting, UPS's policy of refusing to accept FMCSA hearing exemptions as privileged. (*See, e.g.*, D.E. 103; D.E. 115). For example, during the Rule 30(b)(6) corporate deposition, UPS objected to numerous questions as calling for privileged information:

> 14  Q    So leading up to the decision to no longer accept the
> 15       hearing exemption in 2019, what assistive technology
> 16       or other modifications to the training did UPS
> 17       consider or evaluate before implementing its policy
> 18       to no longer accept the hearing exemption?
> 19            MR. LILES:  I'm going to object to the
> 20       extent that any of those discussions were covered by
> 21       attorney-client privilege or attorney work product.
> 22            To the extent the client can answer the
> 23       question outside of that, she's welcome to.
> 24            THE WITNESS:  I don't know.

(D.E. 116.8, 35:14-24).

13   Q    All right.  Going on to letter B of the Exhibit 1(b),

14        what information or research did UPS rely upon to

15        establish its policy in 2019 that it would no longer

16        accept the hearing exemption?

17              MR. LILES:  I'm going to object to the

18        extent that that's covered by attorney-client

19        communications.

20              To the extent she can answer outside of

21        that, you can.

22              MS. GILBERT:  So, Counsel, we dealt with

23        this with our judge.

24              MR. LILES:  Right.

25              MS. GILBERT:  I don't want to know

1        anything that lawyers said, but these are facts of

2        data and information, and that is specifically what

3        I am trying to get at here.

4              MR. LILES:  Sure.  And I am just

5        preserving my objection and allowing the witness to

6        answer.

7              THE WITNESS:  None.  We chose not to

8        accept it.  We don't have to accept it, and the

9        decision was made to not accept it.

(D.E. 140.1, 103:13-104: 9).

UPS must be prevented from revoking the privilege during trial, after months of

asserting its privilege, and well beyond the close of discovery. FED. R. CIV. P. 37(c)(1)

("If a party fails to provide information or identify a witness as required by Rule 26(a)

or (e), the party is not allowed to use that information or witness to supply evidence

on a motion, at a hearing, or at a trial, unless the failure was substantially justified or

is harmless.").

15.    **Any documents that UPS refused to produce on the basis of the attorney-client privilege or the work product privilege.**

The Court should prohibit the introduction of any documents that UPS refused to produce on the basis of the attorney-client privilege or the work product privilege. UPS has continually objected to evidence concerning the CALM Committee's deliberations regarding, or reasons for adopting, UPS's policy of refusing to accept FMCSA hearing exemptions as privileged. (*See, e.g.*, D.E. 103; D.E. 115). In addition, during the Rule 30(b)(6) corporate deposition, UPS objected to certain documents as privileged:

```
10   BY MS. GILBERT:
11   Q    Were there any expert reports from consultants or
12        other individuals knowledgeable in the field of
13        driver training that UPS relied upon to establish the
14        new policy?
15            MR. LILES:  I'm going to object to the
16        extent any of those communications are covered by
17        attorney-client privilege.
18            To the extent factual information the
19        witness knows outside of that, you're welcome to
20        answer.
21            THE WITNESS:  No.
```

(D.E. 140.1, 104:10-21).

UPS must be prevented from revoking the privilege during trial, after months of asserting its privilege, and well beyond the close of discovery. FED. R. CIV. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence

on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

16.   **Any accident and injury reports of deaf UPS drivers, including D-DB-004266-4291 and D-DB-004407-4416.**

The Court should prohibit UPS from introducing any accident and injury reports of deaf UPS drivers, including D-DB-004266-4291 and D-DB-004407-4416. In discovery, Mr. Bemesderfer requested that the UPS admit: "Please admit that the four package car drivers (with the FMCSA hearing exemption) were deemed by UPS to satisfy a safety level which allows them to drive a package car for UPS." (D.E. 108.6 at 12). UPS responded:

> Subject to and without waiving these objections, and assuming Plaintiff is referring to the four current UPS package car drivers named Mario Alvarado, Wyatt Baldwin, Jeffrey Barbuto, and Joseph Kelly, Defendant responds: Defendant lacks sufficient information or knowledge at this time to admit or deny whether throughout the entire time these four individuals have served as package car drivers that no safety concerns have arisen. However, since all four currently work as package car drivers, Defendant admits that it is not aware of any information that indicates any significant safety concerns have arisen such that Defendant has needed to seek their disqualification from driving a package car.

(D.E. 108.6 at 12). Therefore, evidence, argument, or suggestion to the contrary would confuse the issues, mislead the jury, cause undue delay, and waste time. Fed. R. Evid. 403. In addition, these reports do not contain any information about Mr. Bemesderfer. Therefore, the reports are irrelevant, prejudicial, and would confuse the

issues, mislead the jury, cause undue delay, and waste time. FED. R. EVID. 401; FED. R. EVID. 402; FED. R. EVID. 403.

> 17. **Any evidence, argument, or suggestion that the four deaf individuals who possess the FMCSA hearing exemption and whom UPS currently employs as drivers are not safe drivers.**

The Court should prohibit any evidence, argument, or suggestion that the four deaf individuals who possess the FMCSA hearing exemption and whom UPS currently employs as drivers are not safe drivers. In discovery, Mr. Bemesderfer requested that the UPS admit: "Please admit that the four package car drivers (with the FMCSA hearing exemption) were deemed by UPS to satisfy a safety level which allows them to drive a package car for UPS." (D.E. 108.6 at 12). UPS responded:

> Subject to and without waiving these objections, and assuming Plaintiff is referring to the four current UPS package car drivers named Mario Alvarado, Wyatt Baldwin, Jeffrey Barbuto, and Joseph Kelly, Defendant responds: Defendant lacks sufficient information or knowledge at this time to admit or deny whether throughout the entire time these four individuals have served as package car drivers that no safety concerns have arisen. However, since all four currently work as package car drivers, Defendant admits that it is not aware of any information that indicates any significant safety concerns have arisen such that Defendant has needed to seek their disqualification from driving a package car.

(D.E. 108.6 at 12). Therefore, evidence, argument, or suggestion to the contrary would confuse the issues, mislead the jury, cause undue delay, and waste time. Fed. R. Evid. 403. In addition, other drivers' safety records do not bear on Mr. Bemesderfer's ability to safely operate package cars and therefore is irrelevant. FED. R. EVID. 401; FED. R. EVID. 402.

18. **Any evidence, argument, or suggestion that Mr. Bemesderfer did not bid on package car driver positions in 2020.**

The Court should prohibit any evidence, argument, or suggestion that Mr. Bemesderfer did not bid on package driver positions in 2020. UPS has no formal policy to follow for the preservation and oversight of bid sheets. (D.E. 139.27 26:5-11). Until September 11, 2023, all bid sheets produced during the course of discovery were Mr. Bemesderfer's personal records. These records, by Mr. Bemesderfer's own account, are incomplete. Mr. Bemesderfer testified that he "tried" to photograph all the bid sheets he applied for but that he knows he may have "missed" some in every year he applied. (D.E. 108.8, 115:17-23). However, on September 11, 2023, after close of discovery and summary judgment briefing, UPS produced never-before-seen bid sheets, explaining:

> Enclosed are supplemental documents, Bates-stamped D-DB-11042 to 11045, which is a bid sheet posted for temporary cover driver positions in September 2019. When moving some boxes, UPS's Onboarding Specialist Shakeyma Richardson found these misfiled in one of them. She did then verify that there were no other bid sheets signed by Mr. Bemesderfer that were misfiled besides this one. We are producing this bid sheet to you as soon as it was discovered and brought to our attention.

(Exhibit A, September 11, 2023 letter from Christine E. Reinhard to Sharon Caserta). UPS cannot be permitted to benefit from its failure to implement a formal policy for preservation and oversight of bid sheets, nor can it be allowed to leverage that failure against Mr. Bemesderfer. Therefore, the Court must prohibit UPS from relying on an adverse inference against Mr. Bemesderfer by arguing that Mr. Bemesderfer did not

bid on package driver positions in 2020 because he did not produce photographs of all

bid sheets from that year.

19.    **Any evidence, argument, or suggestion that Mr. Bemesderfer's Florida
Civil Rights Act claims are preempted by the Labor Management
Relations Act.**

The Court should prohibit any evidence, argument, or suggestion that Mr.

Bemesderfer's Florida Civil Rights Act claims are preempted by the Labor

Management Relations Act. In denying UPS's motion for summary judgment, the

Court held "preemption under Section 301 of the Labor Management Relations Act

does not apply. Accordingly, the Plaintiff's claims are not preempted by Section 301."

(D.E. 170 at 17-18 (internal citations omitted)). Therefore, any evidence, argument, or

suggestion that Mr. Bemesderfer's Florida Civil Rights Act claims are preempted by

the Labor Management Relations Act is irrelevant and would confuse the issues,

mislead the jury, cause undue delay, and waste time. FED. R. EVID. 401; FED. R. EVID.

402; FED. R. EVID. 403.

20.    **Any evidence, argument, or suggestion that Mr. Bemesderfer failed to
timely exhaust his administrative remedies under the Labor
Management Relations Act.**

The Court should prohibit any evidence, argument, or suggestion that Mr.

Bemesderfer failed to timely exhaust his administrative remedies under the Labor

Management Relations Act. Mr. Bemesderfer's has only raised claims under the

Americans with Disabilities Act and the Florida Civil Rights Act. He has not raised

claims under the Labor Management Relations Act. Therefore, any evidence,

argument, or suggestion that Mr. Bemesderfer failed to timely exhaust his

administrative remedies under the Labor Management Relations Act is irrelevant and would confuse the issues, mislead the jury, cause undue delay, and waste time. FED. R. EVID. 401; FED. R. EVID. 402; FED. R. EVID. 403.

21. **Any evidence, argument, or suggestion regarding 49 C.F.R. § 390.3T(d).**

The Court should prohibit any evidence, argument, or suggestion regarding 49 C.F.R. § 390.3T(d). That provision of the Federal Motor Carrier Safety Regulations provides: "Nothing in this subchapter shall be construed to prohibit an employer from requiring and enforcing more stringent requirements relating to safety of operation and employee safety and health." 49 C.F.R. § 390.3T(d). UPS has cited to this provision to argue that it is lawful under the Americans with Disabilities Act and Florida Civil Rights Act to refuse to participate in the FMCSA's hearing exemption program or accept FMCSA hearing exemptions. However, as explained above, the Court rejected UPS's argument that it "is free to disregard the exemption and deny Mr. Bemesderfer the position because he failed the hearing test" and that "[i]t simply does not matter that Plaintiff obtained an individual exemption from that standard." (D.E. 91 at 5). The Court then held that "an employer cannot simply ignore the exemption. Stated differently, the hearing exemption once issued establishes that the individual is able to perform the essential functions of the employment position he seeks with or without reasonable accommodation." (D.E. 91 at 5). Therefore, any evidence, argument, or suggestion regarding 49 C.F.R. § 390.3T(d) would be irrelevant and would confuse the

issues, mislead the jury, cause undue delay, and waste time. FED. R. EVID. 401; FED.

R. EVID. 402; FED. R. EVID. 403.

22. **Any evidence, argument, or suggestion that Mr. Bemesderfer's FMCSA hearing exemption is a legal nullity.**

The Court should prohibit any evidence, argument, or suggestion that Mr.

Bemesderfer's FMCSA hearing exemption is a legal nullity. In denying UPS's motion

for summary judgment, the Court held that UPS waived this defense. (D.E. 170 at 13).

The Court also held that UPS's legal nullity defense failed because "UPS failed to join

the FMCSA [and] did not challenge the Plaintiff's application for a hearing

exemption." (D.E. 170 at 14). Therefore, any evidence, argument, or suggestion that

Mr. Bemesderfer's FMCSA hearing exemption is a legal nullity would be irrelevant

and would confuse the issues, mislead the jury, cause undue delay, and waste time.

FED. R. EVID. 401; FED. R. EVID. 402; FED. R. EVID. 403.

23. **Any evidence, argument, or suggestion that Mr. Bemesderfer failed to exhaust his claims under the Americans with Disabilities Act and Florida Civil Rights Act.**

The Court should prohibit any evidence, argument, or suggestion that Mr.

Bemesderfer failed to exhaust his claims under the Americans with Disabilities Act

and Florida Civil Rights Act. In denying UPS's motion for summary judgment, the

Court held that "Defendant's argument that Plaintiff failed to exhaust administrative

remedies is rejected. The Court need not dwell on whether ADA exhaustion

requirements apply to state law claims." (D.E. 170 at 6). Therefore, any evidence,

argument, or suggestion to the contrary is irrelevant and would confuse the issues,

mislead the jury, cause undue delay, and waste time. FED. R. EVID. 401; FED. R. EVID. 402; FED. R. EVID. 403.

## Local Rule 3.01(g) Certification

Plaintiff conferred with the Defendant on an ongoing basis from November 15 to November 17, 2023, through email messaging and by telephone and Defendant opposes the relief sought in Section II of this Motion.

**WHEREFORE**, Plaintiff respectfully requests this Court grant this Motion in Limine and grant any other relief it deems proper and just.

Dated: November 17, 2023.

Respectfully Submitted,

**MORGAN AND MORGAN**
*/s/ Sharon Caserta*
Sharon Caserta, Esq.
Florida Bar No. 0023117
Morgan & Morgan
Deaf/Disability Rights Unit
501 Riverside Avenue, Suite 1200
Jacksonville, FL 32202
Telephone: (904) 361-0078
Videophone: (904) 245- 1121
Facsimile: (904) 361-4305
scaserta@forthepeople.com

**HAWKS QUINDEL S.C.**

Summer H. Murshid, Esq.
Wisconsin Bar No. 1075404
smurshid@hq-law.com
Martha Burke, Esq.
Wisconsin Bar No 1121510
mburke@hq-law.com
Connor Clegg
Wisconsin Bar No. 1118534
cclegg@hq-law.com
5150 N. Port Washington Road
Suite 243,
Milwaukee, WI 53217
(414) 269-1210
*Appearing Pro Hac Vice*

**NATIONAL ASSOCIATION OF THE DEAF**

Howard A. Rosenblum, Esq.
Illinois Bar No. 6209888

**GILBERT LAW PLLC**

Heather Gilbert, Esq.
Minnesota Bar No. 0392838
Gilbert Law PLLC
4856 Banning Avenue

howard.rosenblum@nad.org
Marc Charmatz, Esq.
Maryland Bar No. 09358
marc.charmatz@nad.org
National Association of the Deaf
8630 Fenton Street, Suite 820
Silver Spring, MD 20910
(301) 328-1443 (Videophone)
(301) 587-1791 (Facsimile)
*Appearing Pro Hac Vice*

St. Paul, Minnesota 55110
(651) 340-9642 (Voice)
(651) 964-2024 (Videophone)
(651) 344-0835 (Facsimile)
heather@gilbertlawpllc.com
*Appearing Pro hac vice*

*Counsel for Plaintiff*

## Certificate of Service

**I HEREBY CERTIFY** that the foregoing document was electronically filed on this 17th day of November 2023 by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Sharon Caserta*
Sharon Caserta