UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**DUSTIN BEMESDERFER,**

       **Plaintiff,**

v.                                    **Case No: 6:22-cv-270-PGB-EJK**

**UNITED PARCEL SERVICE, INC.,**

       **Defendant.**
_____/

## ORDER

This cause is before the Court on Plaintiff Dustin Bemesderfer's ("**Plaintiff**" or "**Mr. Bemesderfer**") Motion for Partial Summary Judgment. (Doc. 138). Defendant United Parcel Service, Inc. ("**Defendant**" or "**UPS**") submitted a Response in Opposition (Doc. 146 (the "**Response**")), and the Plaintiff replied. (Doc. 152). Further, embedded in Defendant's Response was a request that the Court strike evidence pertaining to its June 2023 pilot program. (Doc. 146, pp. 19-20 (the "**Motion to Strike**")). Upon due consideration, the Plaintiff's Motion for Partial Summary Judgment is granted in part and denied in part. Defendant's Motion to Strike is denied.

**I.  LEGAL STANDARD**

To prevail on a summary judgment motion on any claim or issue, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case. An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014).

The movant bears the initial burden of proving that no genuine factual dispute exists. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). While the nonmovant bears the burden of proving the issue at trial, the moving party will satisfy this initial burden "merely by pointing out to the district court that there is an absence of evidence to support an essential element of the non-moving party's case." *Thurmon v. Ga. Pac., LLC*, 650 F. App'x 752, 756 (11th Cir. 2016) (citing *Celotex*, 477 U.S. at 325).

Once the movant shows there is no genuine dispute of material fact, the burden shifts to the non-movant to prove that a genuine factual dispute exists which would preclude entry of summary judgment. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). To survive summary judgment, the non-moving party "must go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Id*. The non-movant must support its position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatories, or other materials." FED. R. CIV. P. 56(c)(1)(A). If the non-moving party fails to identify specific record evidence

supporting its position, the court must enter summary judgment. FED. R. CIV. P. 56(a).

The court must "view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in favor of the non-movant." *Davila v. Gladden*, 777 F.3d 1198, 1203 (11th Cir. 2015) (quoting *Carter v. City of Melbourne*, 731 F.3d 1161, 1166 (11th Cir. 2013)). At the same time, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1162 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)). Ultimately, summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. DISCUSSION

The Plaintiff brings claims under the Americans with Disabilities Act ("**ADA**") and the Florida Civil Rights Act ("**FCRA**"). (Doc. 12). The ADA makes it unlawful to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). And claims brought under the FCRA are analyzed like ADA claims. *Ivarez v. Royal Atl. Developers, Inc.*, 610 F.3d

3

1253, 1271 (11th Cir. 2010) (explaining that FCRA claims are modeled after Title VII and are analyzed under the same framework). The Plaintiff must prove that he is disabled, is a "qualified individual," and was discriminated against because of his disability.[1] *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 754 (11th Cir. 2023) (citation omitted).

Mr. Bemesderfer acknowledges that a two-step process is used to evaluate an individual's qualifications for a position. *Downing v. United Parcel Serv., Inc.*, 215 F. Supp. 2d 1303, 1309 (M.D. Fla. 2002) (citing *Reed v. Heil Co.*, 206 F.3d 1055, 1062 (11th Cir. 2000)). The candidate must satisfy the prerequisites for the position and be able to perform the essential functions of the job. *Reed*, 206 F.3d at 1062. The Plaintiff is requesting partial summary judgment on the following three points: (1) he is qualified to perform the essential functions of the package driver position, (2) he was subjected to adverse action as a deaf employee when UPS refused to accept his Federal Motor Carrier Safety Administration ("**FCMSA**") hearing exemption and denied him a promotion, and (3) UPS's affirmative defenses of direct threat and undue hardship should be dismissed. (Doc. 138, p. 2).

UPS argues that the Plaintiff must specify the position for which he applied and was rejected. (Doc. 146, p. 7). Without that specificity, the Court cannot determine whether the Plaintiff met all prerequisites and qualifications for the position, including seniority. (*Id.* at pp. 7–8). As such, UPS maintains that the

---

[1]  The parties stipulate that Mr. Bemesderfer is disabled. (Doc. 137, ¶ 14).

4

Plaintiff is disregarding the initial step in the qualification analysis. (*Id.* at p. 7). The Plaintiff is instead focusing on whether he had the physical ability to perform the essential job functions of a driving position. (*Id.*). Since the Plaintiff did not specify a particular bid or establish that he met the prerequisites and qualifications for that bid, UPS contends he cannot prove that he suffered an adverse action. (*Id.* at pp. 12–13). The Defendant also submits the baseline hearing test ("**BLH**") standard is job-related and consistent with business necessity. (*Id.* at p. 16). Finally, UPS asserts that the Plaintiff has not identified any reasonable accommodation that is feasible. The Defendant is therefore not required to show undue hardship.[2] (*Id.* at pp. 17–18).

### A.     Whether Plaintiff is a Qualified Individual with a Disability

Mr. Bemesderfer argues that the Court has ruled that he is a qualified individual because he obtained the FMCSA exemption.[3] (Doc. 138, p. 5 (citing Doc. 91, p. 6)). That is, the Plaintiff asks the Court to find as a matter of law that he can perform the essential functions of the job because he holds a FMCSA hearing exemption. The Court rejected UPS's argument in its Partial Motion for Judgment on the Pleadings that the FMCSA hearing exemption was experimental and found that "once issued [it] establishes that the individual is able to perform the essential functions of the employment position he seeks with or without reasonable

---

[2]   UPS argued for its right to impose the Base-Line Hearing test (BLH) and disregard the FMCSA hearing exemption, as well as Plaintiff's alleged failure to exhaust administrative remedies. In any event, the Court has since rejected these arguments.

[3]   The Plaintiff received the hearing exemption on May 15, 2020. (Doc. 137, ¶ 22).

5

accommodation." (Doc. 46; Doc. 91, p. 5). UPS filed a Motion for Reconsideration, which the Court denied. (Docs. 122, 161).

Mr. Bemesderfer also contends that he meets the essential requirements of a UPS package driver as defined in Defendant's response to Interrogatory Number 4. (Doc. 138, p. 7). UPS counters that the interrogatory only asks why UPS no longer accepts the FMCSA hearing exemption and does not solicit a description of the position's essential requirements. (Doc. 146, p. 9). UPS is correct, but in responding to the question, UPS volunteers a description of the essential functions of the package car driving position.[4] (Doc. 70-5, p. 4). Mr. Bemesderfer has a right to rely on the Defendant's description even if unsolicited.[5]

Mr. Bemesderfer also contends the ability to hear and speak is not essential to the driver position, because UPS employs Joseph Kelly ("**Mr. Kelly**") and Wyatt Baldwin ("**Mr. Baldwin**") as package car drivers and both are deaf and cannot speak clearly. (Doc. 138, pp. 7–8). UPS admits that four drivers holding FMCSA

---

[4] In its answer to this interrogatory, UPS states, in part:

> The essential functions of the UPS package car driving position require the ability to hear and speak and to meet all DOT requirements (including the physical qualification standards). UPS package car drivers also must be able to communicate with UPS customers, public safety personnel, and other members of the general public and successfully complete driver training, which relies on real-time verbal coaching and feedback while driving, something that cannot be done effectively using forms of communication that would require driving candidates to take their eyes off of the road.

(Doc. 70-5, p. 4).

[5] None of the Defendant's objections to Interrogatory Number 4 pertain to its definition of the essential functions of the UPS package driver position. (Doc. 70-5, p. 3).

hearing exemptions were retained despite the company's October 2019 policy to reject such exemptions. (Doc. 139-15, p. 6). UPS asserts these employees were retained because they began driving before the policy took effect and have unspecified contractual rights under the collective bargaining agreement ("**CBA**").[6] (*Id.*). And yet, UPS did not explain how the CBA requires UPS to retain drivers who cannot perform essential functions of the package driver position. Either the ability to hear and speak is essential or they are not. An essential function cannot be left to the employer's discretion to enforce or ignore when convenient.

Mr. Bemesderfer contends that, even using this criterion, he is qualified for the position because he can speak clearly and can hear well with the use of hearing aids. (Doc. 138, p. 8). The Plaintiff points to his deposition testimony during which he did not rely on American Sign Language ("**ASL**") interpreters. (Doc. 108-8, 238:16—239:8). He explains that he passed the road tests and communicated with his instructor by speaking and without an ASL interpreter in the cab. (*Id.* 239:12–22). The Plaintiff also relies on the deposition testimony of Mr. Randall Collins ("**Mr. Collins**") who works as a package car driver and who represented Mr. Bemesderfer at his grievance proceeding. (Doc. 116-9, 9:19–24; 15:5–7). Mr. Collins did not know the Plaintiff was deaf until they discussed his grievance. (*Id.*

---

[6] UPS supplemented its answer to Interrogatory Number 4 on August 4, 2023, in connection with its Motion for Summary Judgment, and two and a half hours after the Plaintiff filed his Motion for Partial Summary Judgment. (Docs. 138, 139). The Supplemental Answer does not change UPS's description of the essential job function for package drivers. (Doc. 139-15, p. 6).

15:5–7). And he had no difficulty communicating with the Plaintiff without the benefit of an ASL interpreter. (*Id.* 15:8–16:4). Mr. Collins stated that Mr. Bemesderfer effectively communicates with his coworkers. (*Id.* 16:5–24).

Despite the above, UPS urges the Court to disregard Mr. Bemesderfer's declaration and deposition testimony and argues the Plaintiff's claim that he can speak and hear is not supported by competent evidence. (Doc. 146, p. 10). UPS also claims that Mr. Bemesderfer's ability to participate in weekly meetings without an interpreter is not relevant because the meetings involve one-way communication by supervisors to employees. (*Id.* at p. 11). Yet UPS conveniently ignores Mr. Collins' testimony in its attempt to create an issue of fact.

The non-movant must support its position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatories, or other materials." FED. R. CIV. P. 56(c)(1)(A). If the non-moving party fails to identify specific record evidence supporting its position, the court must enter summary judgment. FED. R. CIV. P. 56(a). UPS cites no evidence creating a material issue of fact on the Plaintiff's ability to communicate without help from an ASL interpreter. Accordingly, the Court finds Mr. Bemesderfer can hear and speak without help from an ASL interpreter. As the Court previously held, the FMCSA hearing exemption is not experimental, and UPS cannot ignore the

exemption in creating criteria for employment.[7] (*See* Doc. 161, p. 4). Put another way, while UPS may create minimum requirements for a position, it may not create requirements that discriminate against disabled Americans.

As discussed, the test for whether one is a qualified individual within the meaning of the ADA is a two-step process. The Court finds for the Plaintiff on his Motion for Partial Summary Judgment on the second prong of the test: that he can perform the essential functions of the job. More precisely, Mr. Bemesderfer can hear and speak such that he can communicate with UPS customers, public safety personnel, and other members of the public. These essential functions are satisfied by the issuance of the FMCSA hearing exemption, and by Mr. Bemesderfer's ability to speak and hear without the help of an ASL interpreter.

The next essential function of a package car driver is the successful completion of driver training. (Doc. 70-5, p. 4). The Plaintiff contends, and UPS does not dispute, that a candidate for package car driver must pass a preliminary

---

[7] In *Campbell v. Universal City Development Partners, Ltd.*, 72 F.4th 1245, 1254 (11th Cir. 2023), the Court held that compliance with state law and reliance on a manufacturer's recommendations to limit access to water slides by people with limb differences is not a defense to the ADA's prohibition on discriminatory eligibility criteria. While Florida law requires amusement parks to comply with ASTM standards, which may limit who may enjoy a public accommodation, "[a] discriminatory state law is not a *defense* to liability under federal law; it is a *source* of liability under federal law." *Id.* at 1258 (quoting *Quinones v. City of Evanston*, 58 F.3d 275, 277 (7th Cir. 1995)). If a discriminatory state law is not a defense to an ADA violation, a discriminatory policy enacted by an employer is also not a defense, even if well-intended. Since the FMCSA hearing exemption is not experimental and may not be disregarded, UPS may not enact a policy that conflicts with the ADA. *See* 42 U.S.C. § 12112(b)(6) (setting forth that it is unlawful to "discriminate against a qualified individual on the basis of disability . . . using qualification standards . . . that screen out or tend to screen out an individual with a disability.").

road test and complete driver training. (Doc. 138, p. 9). According to UPS, driver training "relies on real-time verbal coaching and feedback while driving. (Doc. 70-5, p. 4). Mr. Bemesderfer attests that he passed the preliminary road test on his first attempt in September 2021. (Doc. 138, p. 9; Doc. 138-2, ¶ 7). And, as the Plaintiff notes, the in-class portion of the driver training, consisting of lectures and self-directed computer training, is accessible to deaf employees via ASL interpreters. (Doc. 138, p. 9 (citing Doc. 116-8, 49:10–23)). Further, the in-class portion of driver training is not an enumerated essential function of the package car driver position. (*Id.* at p. 9). UPS did not address the Plaintiff's evidence demonstrating his ability to perform the essential functions of the package car driver position. As a result, the Plaintiff's Motion for Partial Summary Judgment as to this issue is granted.[8]

### B.   Whether the Plaintiff was Subject to an Adverse Action

The Plaintiff contends he suffered an adverse action when UPS ignored his bids for a package car driver position based solely on its 2019 policy. (*Id.* at p. 12). According to Mr. Bemesderfer's argument, which has been accepted by the Court, although an employer can enforce stricter safety requirements than those mandated by the FMCSRs, they still need to comply with the ADA. (*Id.* at p. 13). That said, before the Court may consider whether the Plaintiff suffered an adverse

---

[8] As previously discussed, a two-step analysis is employed in deciding whether one is "qualified" for a position. The applicant must satisfy prerequisites for the position, such as seniority and holding the proper license, and be able to perform the essential functions of the position. Summary judgment is granted as to the second step. There remains an issue of fact concerning whether the Plaintiff satisfied the prerequisites for the position, such as seniority.

10

action, it must find he is disabled and is a qualified individual. *See Beasley*, 69 F.4th at 754. The parties do not dispute that the Plaintiff is disabled, and the Court has found that Plaintiff is entitled to summary judgment on the second prong of the "qualified individual" analysis. The jury must decide whether the Plaintiff met the prerequisites of the position of package car driver, including seniority or other requirements found in the CBA. As Mr. Bemesderfer correctly observes, "to meet their prima facie case, a *qualified individual* with a disability must demonstrate they suffered an adverse employment action because of their disability." (Doc. 138, p. 13 (emphasis added)). If the Plaintiff did not meet the qualifications for the position, UPS could not have taken unfavorable or adverse action against him. Therefore, the issue of whether the Plaintiff suffered an adverse action is reserved for trial. Accordingly, the Plaintiff's Motion for Partial Summary Judgment on adverse action is denied.

### C. The Defenses of Direct Threat and Undue Hardship

"A disabled individual cannot be qualified for a specific job if he poses a 'direct threat' to the health or safety of himself or others that cannot be eliminated by reasonable accommodations." *Nevitt v. U.S. Steel Corp.*, 18 F. Supp. 3d 1322, 1333 (N.D. Ala. 2014); *see also Pinckney v. Potter*, 186 F. App'x 919, 925 (11th Cir. 2006). A "direct threat" is a "significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation."[9] *Nevitt*, 18 F. Supp. 3d at

---

[9] "In determining whether an individual would pose a direct threat, the factors to be considered include: (1) [t]he duration of the risk; (2) [t]he nature and severity of the potential harm; (3)

1333 (quoting 42 U.S.C. § 12111(3)). Mr. Bemesderfer submits he does not pose a direct threat to himself or others as a package car driver. (Doc. 139, p. 18). Thus, the Plaintiff contends, UPS's direct threat defense must fail. (*Id.* at p. 17).

Mr. Bemesderfer emphasizes that he passed UPS's preliminary road test on his first attempt and previously worked as a full-time shed mover which required him to deliver sheds up to 14 x 30 feet long. (*Id.* at pp. 18–19). He also refers to his "impeccable driving record" as evidence and having obtained an FMCSA hearing exemption of his ability to safely perform the duties of a package car driver. (*Id.* at p. 19). And Mr. Bemesderfer submits that to support its direct threat defense, UPS must identify particularized facts about his condition that support its decision to deny the position. (*Id.*); *see Lowe v. Ala. Power Co.*, 244 F.3d 1304, 1308 (11th Cir. 2001). Because UPS failed to make an individualized assessment of his ability to safely perform the essential functions of a package car driver, Mr. Bemesderfer argues the direct threat defense fails. (*Id.* at pp. 19–20 (citing *Chevron U.S.A. v. Echazabal*, 536 U.S. 73, 86 (2002) (quoting 29 C.F.R. § 163.2(r))).

UPS admits that its "policy does not adopt any requirement regarding an individualized 'direct threat.'" (Doc. 146, p. 15). UPS further claims that its policy to deny employment to individuals holding an FMCSA hearing exemption stands even in the absence of an individualized direct threat assessment because UPS "merely adopts the FMCSR's BLH standard as UPS's policy." (*Id.*). That is, UPS

---

[t]he likelihood that the potential harm will occur; and (4) [t]he imminence of the potential harm." 29 C.F.R. § 1630.2(r).

claims the business necessity defense is properly invoked when the employer elects to impose the BLH standard as a minimum requirement, regardless of the candidate's ability to perform the essential functions of the job. (*Id.* at p. 14). The Court rejects the notion that an employer may circumvent the ADA by implementing a blanket policy that disqualifies holders of an FMCSA hearing exemption.

UPS argues that the burden of proving that an employee does not pose a direct threat lies with the employee. (*Id.* at p. 16). UPS is correct that the employee must prove he does not present a direct threat to show he is a qualified individual.[10] *Leme v. S. Baptist Hosp. of Fla., Inc.*, 248 F. Supp. 3d 1319, 1341 n.34 (M.D. Fla. 2017) (quoting *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1280 (11th Cir. 2001)). But UPS argues passing the preliminary road test does not entitle the Plaintiff to summary judgment, because Mr. Bemesderfer "presented no evidence that this test was an evaluation for whether he was a direct threat." (Doc. 146 at p. 17). Similarly, UPS alleges that neither the Plaintiff's driving record nor his prior employment driving an F-250 pickup truck proves he is not a direct threat to the safety of others or himself because neither involves commercial motor vehicles. (*Id.*). And yet, UPS offers no contrary evidence to demonstrate that Plaintiff poses a direct threat to the safety of others or himself.

---

[10] While the employee must not imperil the safety of others or himself to be considered qualified, the employer may also raise the defense of direct threat. *See Lowe*, 244 F.3d 1308 ("[A] good-faith belief [by the employer] that a significant risk of harm exists is insufficient if it is not grounded in medical or other objective, scientific evidence.").

13

To the contrary, UPS identifies 4 criteria for employment as a package car driver.[11] The candidate must be the most senior bidder and must successfully complete a preliminary road test, Integrad training, and the 30-day working day training period. (*Id.* at p. 2 n.2, p. 19). The Court is not persuaded by UPS's argument that passing its driving test is not evidence of the Plaintiff's ability to perform the essential functions of the position without presenting a direct threat. Even so, UPS can and has provided a reasonable accommodation to deaf employees who seek package car driver positions. Both Mr. Baldwin and Mr. Kelly completed UPS's five-day training program for package car drivers at an Integrad facility in California and were provided interpreters for the classroom portion of the training. (Doc. 138, p. 23). Neither gentleman was placed in special training groups or provided special equipment to complete the training program. (*Id.*). The Plaintiff is thus entitled to summary judgment on the issue that he does not pose a direct threat to the safety of himself or others.

UPS also claims that providing interpreters or allowing hand signals for the on-the-road training are accommodations that impose an undue hardship. (Doc. 146, p. 18). This argument fails for two reasons. First, the Plaintiff does not require interpreters and can communicate without hand signals. And second, UPS has used these devices to accommodate other deaf drivers. Further, UPS's June 2023

---

[11] UPS also submits that the Plaintiff is not qualified, citing the lack of seniority and the BLH standard. (Doc. 146, p. 18). That said, the Plaintiff has not asked for an exception to the seniority criteria, and the Court has rejected the notion that the BLH standard negates the ADA.

Pilot Program in which deaf individuals were afforded reasonable accommodation during driver training and testing demonstrates the fallacy of Defendant's argument that accommodating deaf drivers constitutes an undue hardship. (Doc. 138, pp. 23–24). For these reasons, the Plaintiff is entitled to summary judgment on the issue of undue hardship.

### D. UPS's Motion to Strike

In its Response, Defendant moves to strike evidence about its June 2023 driver training program, arguing it constitutes a subsequent remedial measure. (Doc. 146, p. 19). The Defendant relies on *Canter v. AT&T Umbrella Benefit Plan No 3.*, 33 F.4th 949 (7th Cir. 2022), in which the plaintiff attempted to offer evidence that AT&T agreed to an accommodation after denying the request. (*Id.*). Mr. Bemesderfer argues that *Canter* is not on point because the June 2023 driver training program is offered to show he could perform the essential functions of the package car driver position with reasonable accommodation. (Doc. 152, p. 6). The Court agrees that the June 2023 program is not a subsequent remedial measure. UPS concedes it never considered the Plaintiff's individual limitations or the possibility of accommodating him, opting instead for a blanket policy of implementing the BLH standard regardless of the individual candidate. Therefore, UPS's subsequent decision to accommodate deaf drivers is not remedial. UPS's request that the Court strike evidence relating to the June 2023 pilot program is denied.

15

## III. CONCLUSION

It is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Partial Summary Judgment (Doc. 138) is **GRANTED** as to the issues below:

    a. The Plaintiff is qualified to perform the essential functions of a package car driver;[12]

    b. The Plaintiff does not present a direct threat to the safety of others or himself; and

    c. Reasonable accommodations could have been made available by UPS without undue hardship.

2. Plaintiff's Motion for Partial Summary Judgment on whether he experienced an adverse action is **DENIED**.

3. Defendant UPS's Motion to Strike, which was embedded in its Response to Plaintiff's Motion for Partial Summary Judgment (Doc. 146), is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on December 14, 2023.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[12] The Court does not reach the issue of whether the Plaintiff was the most senior applicant for a specific driver position or otherwise satisfied prerequisites imposed by the CBA.