# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

DUSTIN BEMESDERFER,

        **Plaintiff,**

v.                              **Case No: 6:22-cv-270-PGB-EJK**

UNITED PARCEL SERVICE,
INC.,

        **Defendant.**

_____/

## <u>ORDER</u>

This cause is before the Court on the Defendant UPS's ("**Defendant**" or "**UPS**") Motion to Exclude Plaintiff Dustin Bemesderfer's ("**Plaintiff**" or "**Mr. Bemesderfer**") Federal Motor Carrier Safety Administration ("**FMCSA**") Exemption and Training Expert, Mr. Don Olds ("**Mr. Olds**"). (Doc. 127 (the "***Daubert* Motion**")). The Plaintiff filed a Response in Opposition.[1] (Doc. 176). Applying the analysis outlined in *Daubert* and its progeny to the opinions offered

---

[1]  On November 17, 2023, the Court entered an endorsed Order directing Plaintiff to respond to the Defendant's *Daubert* Motion. (Doc. 171). The Court incorrectly believed the Plaintiff had failed to submit a timely response to the *Daubert* Motion because of the volume of motions filed here. The Plaintiff correctly observes that UPS's *Daubert* challenge directed at Mr. Olds is not properly before the Court, because the Court never ruled on the Defendant's request for leave for additional time to file the *Daubert* Motion. (Doc. 117). The *Daubert* Motion was due by July 21, 2023, and UPS sought a brief extension that same day. (*Id.*). The Court directed the Plaintiff to respond, which he did. (Doc. 120). UPS filed the *Daubert* Motion on July 26, 2023—the date requested by the Defendant—without waiting for the Court to rule. (Doc. 127). The Plaintiff did not respond, because the *Daubert* Motion had not been authorized by the Court. Thus, the Court's endorsed Order of November 17, 2023 (Doc. 171) was issued in error. However, because Plaintiff was given an opportunity to file a response to the *Daubert* Motion and did so respond, in this Order, the Court rules on the *Daubert* Motion's merits. (Docs. 171, 176).

by Mr. Olds, and considering Federal Rule of Evidence 702, Mr. Olds is qualified to offer the opinions expressed in his report and deposition and his opinions are relevant and helpful. Accordingly, the Defendant's *Daubert* Motion is denied.

## I.   LEGAL STANDARD

The Court's analysis of the admissibility of expert testimony begins with Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine the fact in issue;
> >
> > (b)   the testimony is based on sufficient facts or data;
> >
> > (c)   the testimony is the product of reliable principles and methods; and
> >
> > (d)   the expert has reliably applied the principles and methods to the facts of the case.

As explained by the Supreme Court, the purpose of the expert admissibility rules is to enlist the federal courts as "gatekeepers" tasked with screening out "speculative" and "unreliable expert testimony." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). In the Eleventh Circuit, the requirements for the admissibility of expert testimony are distilled into these three factors:

> (1)   the expert is qualified to testify competently regarding the matters he intends to address;

> (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and
>
> (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine the fact in issue.

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (footnote omitted). "While there is inevitably some overlap among the basic requirements—qualification, reliability, and helpfulness—they remained distinct concepts[.]" *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)).

As to the reliability prong, admissibility under *Daubert* inherently requires the trial court to conduct an exacting analysis of the proffered expert's methodology. *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002). The Supreme Court has identified several factors for courts to consider when conducting that analysis, including (1) whether the theory or technique can be, and has been, tested; (2) whether the theory or technique has undergone peer review and publication; (3) the known or potential rate of error; and (4) whether the theory has attained general acceptance in the relevant scientific community. *Daubert*, 509 U.S. at 593–94.

"Of particular relevance to an expert proffered for his experience, the court notes that neither *Daubert* nor its progeny preclude experience-based testimony." *Butler v. First Acceptance Inc.*, 652 F. Supp. 2d 1264, 1272 (N.D. Ga. 2009)

(quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999)). "When an expert relies primarily on experience, the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.* (quoting *Frazier*, 387 F.3d at 1261).

## II.  DISCUSSION

The Defendant seeks to exclude Mr. Olds' opinions on the ability of deaf individuals holding an FMCSA hearing exemption to safely operate package cars. (Doc. 127, p. 1). UPS claims Mr. Olds' proffered opinions are not supported by training or education and derive from his anecdotal experience, rather than scientific method or analysis. (*Id.*). And UPS contends Mr. Olds' experience is not relevant to the claims advanced by Mr. Bemesderfer. (*Id.* at pp. 1–2). For example, UPS claims Mr. Olds conceded at deposition that he lacks training or education relevant to his proffered opinions. (*Id.* at p. 4). UPS further argues that Mr. Olds' experience relates to training people with commercial driver's licenses and not UPS vehicles or routes. (*Id.* at pp. 2, 4). Accordingly, UPS argues Mr. Olds lacks the "specialized knowledge" necessary to testify as a training and hearing exemption expert, without proffering what such specialized knowledge includes. (*Id.*).

"[A]s to qualification, the standard for admissibility is not stringent. *Hendrix v. Evenflo Co., Inc.*, 255 F.R.D. 568, 578 (N.D. Fla. 2009). "[S]o long as the expert is at least minimally qualified, gaps in his qualifications generally will

not preclude admission of his testimony, as this relates more to witness credibility and thus the weight of the expert's testimony, than to its admissibility." *Id.* (citation omitted). An expert may be qualified based on any combination of "'knowledge, skill, experience, training, or education'; he need not be a leading authority in the field." *Id.* The Plaintiff's counsel counters that Mr. Olds' experience surpasses the minimal qualifications required of an expert witness. (Doc. 176, pp. 4–5).

To determine whether an expert is qualified, the Court examines "the credentials of the proposed expert in light of the subject matter of the proposed testimony." *Clena Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012). Although Mr. Olds did not train hearing-impaired individuals to operate UPS's specific vehicles, he was a commercial driver's license instructor in Texas and trained hearing-impaired individuals to drive tractor-trailers safely. (Doc. 127-2, 5:6–11). At deposition, Mr. Olds explained that commercial motor vehicles ("**CMV**") are 80,000 pounds and are longer and harder to maneuver than a package car. (*Id.* 12:8–19). These vehicles operate on irregular routes, while package cars travel on dedicated routes. (*Id.*). And so, Mr. Olds explained that if deaf and hearing-impaired drivers can be trained to safely operate a CMV, they can be trained to safely drive UPS delivery vehicles. (*Id.*). Mr. Olds has testified as an expert on the feasibility of training deaf people to drive package cars, and no Court has found his testimony unreliable. (*Id.* 27:5–23). Moreover, Mr. Olds testified at deposition regarding the basis for his opinion that deaf individuals holding a

hearing exemption can be taught to safely operate package cars. (*Id.* 58:15–20). The Court has considered Mr. Olds' testimony and his experience and finds he is more than minimally qualified to offer his proffered opinions.

UPS next argues that Mr. Olds' opinions lack scientific basis or data, making them unreliable. (Doc. 127, p. 6). Defendant submits that Mr. Olds' opinion about accommodations for hearing-impaired package car driver candidates has not been tested, has not faced peer review or publication, and is not supported by data concerning the potential rate of error or acceptance by the broader community. (*Id.*). The Court in *Frazier* clarified that the trial court should consider "to the extent practicable" the factors identified by UPS. *See Frazier*, 387 F.3d at 1262. The Court noted that "[t]hese factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion." *Id.* (citing *Kumho Tire Co.*, 526 U.S. at 150–152).

The Court finds Mr. Olds' opinions to be reliable enough to warrant consideration by the jury. First, Mr. Olds has experience training deaf drivers to operate CMVs using sign language and agreed-upon hand signals. (Doc. 176, p. 8; Doc. 127-2, 29:13–16). Second, Mr. Olds visited the Integrad Training facility and interviewed the Plaintiff.[2] (*Id.* 36:8–19). Third, he watched video recordings of Mr. Quinton Murphy and Mr. Bemesderfer each driving a package car, both of whom

---

[2]   At the Integrad site visit, Mr. Olds observed the training, including watching drivers making practice deliveries. (Doc. 127-2, 49:24–50:5).

are deaf or hearing-impaired. (*Id.* 44:22–46:17, 51:19–52:16). Based on his training and experience, Mr. Olds opines that individuals with an FMCSA hearing exemption are as qualified to drive a package car as persons who do not require the hearing exemption. (*Id.* 54:8–15). The Court reached the same conclusion. He also concludes that drivers with a hearing exemption can be taught to safely drive package cars by using sign language, hand signals, and other accommodations. (*Id.* 54:16–20; Doc. 176, p. 8). Mr. Olds has trained deaf individuals to operate CMVs using similar accommodations. (Doc. 176, pp. 8–9). And, finally, Mr. Olds finds that drivers with a hearing exemption can perform the essential functions of a package car driver safely with or without accommodation and do not pose a direct threat. (*Id.* at p. 8). The Court agrees with Mr. Olds as discussed in its Order granting partial summary judgment for the Plaintiff. (Doc. 179).

Accordingly, the Court finds Mr. Olds is qualified to offer these opinions, the methodology employed is reliable, and the opinions are helpful to the jury.

## III.   CONCLUSION

For these reasons, UPS's Motion to Exclude Plaintiff's FMCSA Exemption and Training Expert (Mr. Don Olds) (Doc. 127) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on December 18, 2023.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties